### Ex parte T. NAGATA.

(District Court, S. D. California, S. D. February 19, 1926.)

#### No. 7570.

**1. Aliens ⬅53—Alien re-entering United States after fishing trip in foreign waters on American vessel held not making original entry, and not subject to deportation as likely to become public charge.**

Alien who, after residing in United States for more than five years, left its territorial limits on American fishing boat, and, without landing, returned in a month, *held* not to have departed from United States to an extent giving his arrival on return the character of an original entry, warranting his deportation as one likely to become public charge.

**2. Aliens ⬅54(13)—Deportation warrant held unaffected by order reopening proceedings made pending habeas corpus proceedings by alien.**

Warrant of deportation *held* unaffected by order reopening proceedings pending habeas corpus proceedings by alien, not made for purpose of correcting findings or warrant.

**3. Aliens ⬅54(13).**

Deportation under warrant can only be made for cause charged and stated therein.

**4. Aliens ⬅54(16).**

Deportation warrant is conclusive on courts, if supported by some evidence; otherwise it is deemed arbitrary and unlawful.

•

Habeas Corpus. Application by T. Nagata for writ to be directed to the immigration officer at the port of Los Angeles. Petitioner discharged.

Herbert N. Ellis and J. Edward Keating, both of Los Angeles, Cal., for petitioner.

Samuel W. McNabb, U. S. Atty., and J. Geo. Channesian, Asst. U. S. Atty., both of Los Angeles, Cal., for respondent.

JAMES, District Judge. [1] Petitioner, a native of Japan, had for more than five years prior to October, 1924, been a resident of the United States. His employment was that of a fisherman. On October 4, 1924, he was employed by the owner of a motor fishing vessel called the Washington. The Washington was owned by an alien Japanese, but its home port was Los Angeles, in the state of California, where it was regularly numbered in the records of the customs office of the district. It is conceded that the Washington had the status of an American vessel engaged in foreign commerce.

On October 4, 1924, the Washington, with petitioner on board as one of the crew, visited nearby Mexican waters for the pur-

pose of fishing. It returned to the port of Los Angeles on November 4, 1924. Petitioner was there detained by the immigration officers on the ground that he was not entitled to enter the United States. The particular charge made was that the alien entered on the 4th of November, 1924, "by means of false and misleading statements, thereby entering without inspection, and that he was a person likely to become a public charge at the time of his entry." A hearing was had in the usual course, and the Secretary of Labor later issued a warrant of deportation.

The question involved is as to whether the going by the petitioner outside the territorial limits of the United States constituted a departure so as to give the character of an original entry to his arrival on the return trip. Petitioner did not leave the ship from the time it left the port of Los Angeles until it returned to the same port. There was no intention on his part to land or remain in foreign territory permanently or temporarily. These facts bring the case directly within the case of Weedin v. Okada, 2 F.(2d) 321 (C. C. A. 9th), decided November 24, 1924, and In re Hersvik and Kongsvik (D. C.) 1 F.(2d) 449, decided August 13, 1924. Respondent admits that, under the facts, the decisions cited being considered, petitioner is entitled to be discharged, but argues that, in view of expressions of the Supreme Court of the United States in certain cases, an American ship is not to be considered as American ground while in foreign waters. To this point is cited Scharrenberg v. Dollar S. S. Co. et al., 38 S. Ct. 28, 245 U. S. 122, 62 L. Ed. 189, and U. S. v. N. Y. & Cuba Mail S. S. Co., 46 S. Ct. 114, 70 L. Ed. ——, decided by the Supreme Court on December 14, 1925. I find nothing inconsistent with what was decided in the Hersvik and Okada Cases in either of the decisions of the Supreme Court which respondent notes. In the Scharrenberg Case the court had the question to consider as to whether an alien employed on an American ship should be considered as performing labor in the United States so as to make the steamship company liable for the criminal penalty provided in a special act of Congress (34 Stat. 900, § 4) designed to punish a corporation for assisting or encouraging the importation of contract laborers "into the United States," where the seamen had been employed at a foreign port. The court in that case said:

"Equally unallowable is the contention that a ship of American registry engaged in foreign commerce is a part of the territory of the United States in such a sense that men employed on it can be said to be laboring 'in the United States' or 'performing labor in this country.' "

Nor does the decision of the court in the N. Y. & Cuba Mail S. S. Co. Case afford better support for the contention of respondent. In that case there was considered the application of a special act (Act Dec. 26, 1920, 41 Stat. 1082 [Comp. St. Ann. Supp. 1923, § 4289¼sss]), which provided for hospital treatment of "diseased alien seamen." The court declared:

"The general principle that an alien while a seaman on an American vessel is regarded as being an American seaman in such sense that he is under the protection and subject to the laws of the United States (In re Ross, 11 S. Ct. 897, 140 U. S. 453, 479, 35 L. Ed. 581) has no application to the question whether aliens employed on American vessels are included within the terms of a special statute dealing solely and specifically with 'alien seamen,' as such."

It will be noted there that the court expressly recognized the Ross Case as containing a correct statement of the law that an alien seaman on an American vessel is regarded as an American seaman in the sense that he is under the protection, and subject to the laws, of the United States. And so, in the solution of the question, the decisions wherein the applicability of special acts to special circumstances is considered afford little aid. If an alien who has acquired the right to reside in the United States must forfeit that right when, in the course of his ordinary business as a seaman on a domestic vessel, he is carried into foreign waters, the result is harsh indeed, and is one which I do not believe was intended by any provisions of the immigration law.

[2] After the writ was issued herein, the respondent immigration officer was advised by the Commissioner General of Immigration that the case had been reopened for additional evidence; the telegram of advice stating that the reopening of the case had been authorized "for evidence detail activities since Nov. fourth, nineteen twenty four, and whether intended abandon seaman calling at entry Nov. fourth." Petitioner by his counsel insists that, a warrant of deportation having been issued by the Secretary of Labor, it could not be vacated at the motion of the government and a new hearing entered upon so as to deprive petitioner of the benefit of a ruling in this proceeding. There is no doubt that, where a warrant of deportation is defective in form or in its statement of essential contents, the Secretary of Labor

may take opportunity to correct the same, and, where habeas corpus has been resorted to as against the defective warrant, the court will refrain from discharging a person so held, and allow a reasonable time within which to correct the warrant of deportation. Such a course was allowed in the case of Mahler v. Eby, 44 S. Ct. 283, 264 U. S. 32, 68 L. Ed. 549. The court there, however, gave no expression which would sanction the reopening of a case which had gone to warrant of deportation so as to allow other or different evidence to be introduced pertinent to a charge different from that upon which the deportation proceedings rested. In the decision last cited the court expressly stated that the Secretary of Labor should have a reasonable time to correct his finding "on the evidence produced at the original hearing, if he finds it adequate, or to initiate another proceeding against them." If a delay in the entry of a judgment in this proceeding can be made to serve either of the ends indicated in the decision just cited, then the decision should be withheld. It seems quite plain that the warrant of deportation issued by the Secretary of Labor was not ipso facto set aside by reason of the direction given by the Commissioner General of Immigration. It is questionable whether, if the warrant were ordered vacated by the Secretary's direction, there could anything else result than the immediate discharge of the alien, unless a new proceeding, based upon new or additional grounds, was instituted against him.

[3] But, leaving aside the question of authority, it does not appear here that the reopening of the case is for any such purpose as correcting the findings and warrant, as the same have been made, to meet any condition shown by the evidence. Neither is it suggested that new charges are to be preferred. Hence the warrant of deportation stands unaffected. The warrant is sufficient in form, and no determination can be made by the Secretary of Labor which will make the position of respondent any stronger. The government can deport under its warrant only for the cause charged and stated therein. Throumoulopolou v. U. S., 3 F.(2d) 803 (C. C. A. 1st).

[4] The decision of the Secretary of Labor in awarding a warrant of deportation is final and conclusive on the courts, provided there is some evidence to sustain the conclusion made. If there is no such evidence, then the decision is deemed to be arbitrary and unlawful. Lewis v. Frick, 34 S. Ct. 488, 233 U. S. 291, 58 L. Ed. 967; Zakonaite v. Wolf, 33 S. Ct. 31, 226 U. S. 272, 57 L.

Ed. 218; Kwock Jan Fat v. White, 40 S. Ct. 566, 253 U. S. 454, 64 L. Ed. 1010; Bilokumsky v. Tod, 44 S. Ct. 54, 263 U. S. 149, 68 L. Ed. 221; Chryssikos v. Commissioner, 3 F.(2d) 372 (C. C. A. 2d); U. S. v. Curran, 4 F.(2d) 356 (C. C. A. 3d). Here the admitted facts do not justify the order of deportation; hence the order is arbitrary within the meaning of the decisions.

It is ordered that petitioner be discharged and his bond exonerated. This order is without prejudice to any further proceedings that the immigration officers may desire to institute against the alien on a new or different charge than that stated in the warrant of deportation herein referred to.