**MATSUTAKA v. CARR, District Director of Immigration.**

No. 6330.

Circuit Court of Appeals, Ninth Circuit.

Feb. 24, 1931.

William H. Wylie and H. P. L. Beck, both of San Diego, Cal., for appellant.

Samuel W. McNabb, U. S. Atty., and Harry Graham Balter and Ignatius F. Parker, Asst. U. S. Attys., all of Los Angeles, Cal. (Harry B. Blee, U. S. Immigration Service, of Los Angeles, Cal., on the brief), for appellee.

J. Edward Keating and Theodore E. Bowen, both of Los Angeles, Cal., amici curiæ.

Before RUDKIN, WILBUR, and SAW-TELLE, Circuit Judges.

RUDKIN, Circuit Judge.

This is an appeal from an order denying a petition for a writ of habeas corpus. The question for decision is this: Is an alien seaman who has resided in the United States for a period barring his deportation for an illegal entry entitled to re-enter the United States upon his return from a fishing voyage in foreign waters as a member of the crew of an American fishing vessel. This question was answered in the affirmative by this court in Weedin v. Banzo Okada, 2 F.(2d) 321, and that decision has been generally followed by the District Courts of this circuit. Ex parte T. Nagata (D. C.) 11 F.(2d) 178; Ex parte Kogi Saito (D. C.) 18 F.(2d) 116. The government concedes this, but earnestly insists that the doctrine announced by this court in the Okada Case was in effect overruled by the Supreme Court in U. S. ex rel. Claussen v. Day, 279 U. S. 398, 49 S. Ct. 354, 73 L. Ed. 758. With this contention we are unable to agree. In the Okada Case, the appellee entered the United States unlawfully in 1917 and continued to reside in the United States until June, 1921. In the latter month he shipped as a member of the crew of the Cross Keys, a United States Shipping Board vessel, for a voyage from ports of the United States to Oriental ports and return. August 24, 1921, he returned to the United States with his vessel, as a member of the crew, and continued to thereafter reside in the United States until a warrant for his deportation was issued August 24, 1924; the warrant reciting that he was a person likely to become a public charge at the time of his entry and that he entered the United States at a time and place not designated by the immigration officers. The entry thus referred to was the original unlawful entry in 1917, which occurred more than five years prior to the time of deportation. Under the foregoing facts, this court held that the five-year period commenced to run from the date of the prohibited entry, and that the bar of the statute was a complete defense, unless the entry at the close of the voyage to Oriental ports was prohibited by law. It will thus be seen that deportation was sought in the Okada Case because of an unlawful entry into the United States, whereas in the Claussen Case deportation was sought because of the commission of a crime involving moral turpitude committed in the United States within five years after entering. The Supreme Court held that the return to the United States at the close of the voyage to South American and Cuban ports was an entry within the meaning of the limitation provisions of section 19 of the Immigration Act of 1917 (8 USCA § 155). But the legality of that entry was not considered, the court stating:

"It is immaterial whether he was entitled to admission or whether he lawfully entered. The cause for which his deportation was ordered arose after entry."

In other words, in the Claussen Case the court was only concerned with the fact of entry, while in this case we are chiefly concerned with the right of entry.

If the broad contention of the government is upheld, an alien seaman domiciled in the United States cannot ship for a voyage to a foreign port and return without forfeiting his right to re-enter the United States, because it will be practically impossible for him to comply with the visa and other provisions

of the Immigration Act of 1924 (43 Stat. 153).

Furthermore, as pointed out in the Okada Case, the master of the vessel was placed between two fires. If he refused to return the seaman to the home port, as stipulated, he incurred a penalty, and if he did return him he incurred a heavier penalty. A hazardous choice, to say the least. Here, the plight of the master was even worse. The appellant shipped for a voyage from San Diego, Cal., to Mexican waters and return. No foreign port was named, and it is questionable, at least, whether any foreign port or place was in fact entered. The master returned the seaman to the home port as agreed, but was not permitted to land him. Nor, so far as we are advised, could he discharge him elsewhere without his consent. Ordinarily, the master can return an alien to the port at which he embarked; but the place of embarkation here was in the United States, not in a foreign port or place. It would seem therefore that the master has the appellant on his hands for all time, unless the latter consents to go to some other port or place. Under such circumstances, and even conceding the right of deportation after landing, it would seem that the appellant is unlawfully deprived of his liberty.

The order is reversed, with instructions to issue the writ of habeas corpus as prayed.