**UNITED STATES LINES CO. v.
SHAUGHNESSY.**

No. 161, Docket 22227.

United States Court of Appeals
Second Circuit.

Argued Feb. 8, 1952.

Decided March 17, 1952.

Delbert M. Tibbetts, New York City
(Kirlin, Campbell & Keating, New York
City, on the brief), for plaintiff-appellant.

John M. Cunneen, Asst. U. S. Atty., New
York City (Myles J. Lane, U. S. Atty., New
York City, on the brief), for defendant-appellee.

Before SWAN, Chief Judge, and L.
HAND and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff herein sought a declaratory judgment denying an asserted power of the immigration authorities to order detention by it and at its expense, at the termination of a voyage to foreign parts, of alien seamen hired in the United States and now claimed to be subject to inspection or deportation under 8 U.S.C.A. § 167(a). Plaintiff also demanded money damages in the amount of the expenses incurred by it in maintaining such seamen and transferring them to Ellis Island, as well as an injunction against further such orders from the authorities. After a trial the District Court gave judgment for the defendant on the merits with a detailed opinion. D.C.S.D. N.Y., 101 F.Supp. 61. Plaintiff now appeals.

The dispute concerns detention orders issued as to some fourteen alien seamen in the employ of plaintiff during the years 1947 and 1948. They were originally hired in New York while in possession of United States Coast Guard Seamen's documents qualifying them for service on vessels of American registry, and Department of Commerce certificates of identification. Their articles of hire related solely to round-trip voyages from New York to foreign ports and return for discharge in this country. Following such voyages, the New York immigration inspector issued orders to the line to detain the seamen for inspection and, in some cases, deportation. Plaintiff contends that the issuance of these orders as to aliens hired in this country was not within the statutory authority of 8 U.S.C.A. § 167(a). The injury alleged is not only the "interference with the orderly operation of the vessels," but also the expenses attendant upon detention on Ellis Island, which, under 8 U.S.C.A. § 151, are borne by the shipping company.

■ There can now be little question that a suit will lie against a defendant such as here for acting beyond his statutory authority, even though a subordinate, Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 701–702, 69 S.Ct. 1457, 93 L. Ed. 1628; and the declaratory judgment, together with an enforcing injunction, furnishes a proper device to test the scope of this authority. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 139–140, 71 S.Ct. 624, 95 L.Ed. 817.

■ On the merits, however, we think that 8 U.S.C.A. § 167(a) patently contemplates such orders as were issued. The statutory language is rather unusually direct: "The owner, charterer, agent, consignee, or master of any vessel arriving in the United States from any place outside thereof who fails to detain on board any alien seaman employed on such vessel until the immigration officer in charge at the port of arrival has inspected such seaman * * or who fails to detain such seaman on board after such inspection or to deport such seaman if required by such immigration officer or the Attorney General to do so" shall be subject to certain penalties.

■■ It is clear that Congress may require a shipping company to maintain the expense of all those brought by it to this country who are denied admission. United States v. New York & Cuba Mail S. S. Co., 269 U.S. 304, 46 S.Ct. 114, 70 L.Ed. 281. And we have previously upheld this very section in its general application to alien seamen coming from abroad. Lloyd Royal Belge Societe Anonyme v. Elting, 2 Cir., 61 F.2d 745, affirming D.C.S.D.N.Y., 55 F. 2d 340, certiorari denied 289 U.S. 730, 53 S. Ct. 526, 77 L.Ed. 1479; The Limon, 2 Cir., 22 F.2d 270. Since the seamen were clearly employed on a "vessel arriving in the United States from any place outside thereof," they fell within the class thus defined against whom such orders may be issued. And the mere fact that they bore documents qualifying them as members of a crew on an American vessel may not be 'held as creating a form of estoppel against federal authority. U. S. ex rel. Lapides v. Watkins, 2 Cir., 165 F.2d 1017. The defendant's orders thus appear to be quite within the statutory grant.

■ Plaintiff, however, contends that a contrary construction should apply to alien seamen originally shipped on board in the United States, and relies on legislative history and upon a claimed definition found in § 3 of the Immigration Act of 1924, 8 U.S. C.A. § 203. The District Court found the

legislative history quite inconclusive, and we wholly agree. It is obvious that Congress wished to plug the loophole of improper entrance by seamen; it also apparently aimed to protect alien seamen properly within and shipping from America, first providing for their identification through a system of landing cards, a scheme ultimately abandoned. See, e. g., H.R.Rep.No.350, 68th Cong., 1st Sess.; Conf.Rep. to accompany H.R. 7995 (H.R.Rep.No.688, 68th Cong., 1st Sess.). But this shows merely general awareness of a problem barely touched on (or ignored) in the drafting of 8 U.S.C.A. § 167(a), which was rather concerned with the device of using the steamship companies as an auxiliary means of control. There is nothing in the remarks in debate of various Senators and Representatives quoted to us from 65 Cong.Rec. 8568 et seq., 8638, 8640, to suggest restriction of this ingeniously useful scheme (government-wise) to only one group of the general class "alien seamen," while other remarks cited by defendant do seemingly tend to support the latter's contentions, e. g., 65 Cong.Rec. 5830, 6168, etc. As for the definition relied on, it is actually that of an "immigrant," and the argument has to rest upon a claimed negative implication too refined to be persuasive. The statutory phrase is far from one limiting (here or elsewhere in the extensive Act) the phrase "alien seaman" to one "departing from any place outside the United States destined for the United States." Such an argument requires too extensive a manipulation of the statutory clauses—quoted in the note [1]—to carry persuasion.

■ We conclude that no reason is shown why the statute should not be construed to mean what it appears to say. Christensen v. United States, 2 Cir., 194 F.2d 978. Our holding here is of course limited to the rights and obligations of the steamship company; it does not decide in any way the extent of the seaman's right to attack his particular detention. Where de-

portation becomes patently impossible or is barred by a prior residence in this country, the writ of habeas corpus provides an adequate remedy to test the individual's right to land. The Southern Prince, D.C.E.D.N.Y., 4 F.Supp. 190; Matsutaka v. Carr, 9 Cir., 47 F.2d 601.

Affirmed.

---

[1]. 8 U.S.C.A. § 203: "When used in this chapter the term 'immigrant' means any alien departing from any place outside the United States destined for the United States, except * * * (5) a bona fide alien seaman serving as such on a vessel arriving at a port of the United States and seeking to enter temporarily the United States solely in the pursuit of his calling as a seaman."