**WEEDIN, Immigration Com'r, v. BANZO OKADA.**

(Circuit Court of Appeals, Ninth Circuit. November 24, 1924.)

No. 4332.

1. **Aliens ⬅54—Five-year period, during which alien unlawfully entering United States may be deported, begins to run from date of prohibited entry.**

Five-year period, during which alien unlawfully entering United States may be deported, under Immigration Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), begins to run from date of prohibited entry.

2. **Aliens ⬅54—Statute prohibiting bringing aliens into United States not applicable to member of crew, who had previously unlawfully entered, and deportation more than five years after original entry not authorized.**

Immigration Act Feb. 5, 1917, § 8 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼dd), prohibiting masters of vessels from bringing excluded aliens into United States, in view of Rev. St. § 5363 (Comp. St. § 10468), does not apply to member of crew of American vessel, who had previously unlawfully entered, and his return on such vessel within five years of original entry was not unlawful, so as, to authorize his deportation, under section 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), more than five years after original entry.

3. **Aliens ⬅53—Status of alien member of crew of American vessel not changed, because by permission of captain he landed for few hours in foreign port.**

Alien seaman, who remained on board American ship, did not leave United States, and his status was not changed because he was permitted by captain to land for few hours in foreign port.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Petition by Banzo Okada against Luther Weedin, as United States Commissioner of Immigration at the Port of Seattle, Wash. From an order discharging petitioner from custody, the Commissioner of Immigration appeals. Affirmed.

Thos. P. Revelle, U. S. Atty., and C. T. McKinney, Asst. U. S. Atty., both of Seattle, Wash., for appellant.

James Kiefer, of Seattle, Wash., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. Section 19 of the Immigration Act of February 5, 1917 (39 Stat. 889 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj]), provides that, at any time within five years after entry, any alien, who at the time of entry was a member of one or more of the classes excluded by law, shall, upon the warrant of the Secretary of Labor, be taken into custody and deported.

The appellee entered the United States unlawfully in 1917, and continued to reside here until June, 1921. In the latter month he shipped as a member of the crew of the Cross Keys, a United States Shipping Board vessel, for a voyage from ports in the United States to Oriental ports and return. At the close of the voyage on August 26, 1921, he returned to the United States with the vessel, as a member of the crew, and has continued to reside here ever since. On the 24th day of April, 1924, the Secretary of Labor issued a warrant for his deportation, reciting that the appellee was a person likely to become a public charge at the time of his entry, that he entered by water at a time and place other than as designated by the immigration officials, and that he entered in violation of rule 7 of the Immigration Rules.

[1, 2] On the foregoing facts the court below discharged the appellee from custody, and the Commissioner of Immigration has appealed. The five-year period commences to run from the date of the prohibited entry, and the bar of the statute was here complete, unless the entry at the close of the voyage in question was prohibited by law. Lewis v. Frick, 233 U. S. 291, 34 S. Ct. 488, 58 L. Ed. 967. In our opinion it was not. Section 5363, R. S. (Comp. St. § 10468), provides:

"Every master or commander of any vessel belonging, in whole or in part, to any citizen of the United States, who, during his being abroad, maliciously and without justifiable cause forces any officer or mariner of such vessel on shore, in order to leave him behind in any foreign port or place, or refuses to bring home again all such officers and mariners of such vessel whom he carried out with him as are in a condition to return and willing to return, when he is ready to proceed on his homeward voyage, shall be punished by a fine of not more than five hundred dollars, or by imprisonment not more than six months."

Section 8 of the Immigration Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼dd) provides:

"That any person, including the master, agent, owner, or consignee of any vessel, who shall bring into or land in the United States, by vessel or otherwise, or shall attempt, by himself or through another, to bring into or land in the United States, by vessel or otherwise, or shall conceal or harbor, or attempt to conceal or harbor, or assist or abet another to conceal or harbor in

any place, including any building, vessel, railway car, conveyance, or vehicle, any alien not duly admitted by an immigrant inspector or not lawfully entitled to enter or to reside within the United States under the terms of this act, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not exceeding $2,000 and by imprisonment for a term not exceeding five years, for each and every alien so landed or brought in or attempted to be landed or brought in."

It would be strange indeed if one provision of the law punished the master for not returning a seaman, and another punished him for bringing the same seaman into the country. If the contention of the Commissioner of Immigration is upheld, the master of an American vessel with alien seamen on board is placed between two fires. If he refuses to return them to the home port he is guilty of a misdemeanor, and if he does return them he may be guilty of a felony. In discussing a similar situation in the case of the Chinese Cabin Waiter (C. C.) 13 F. 286, Mr. Justice Field said:

"Any other construction would compel a master of an American vessel, leaving a port of the United States with a Chinese seaman or waiter, to send him adrift at a foreign port at which the vessel might touch, and prohibit the master from bringing him back in accordance with the bond which he is required by existing law to execute. * * * And in this connection it should not be overlooked that the petitioner, while on board the steamship as one of its crew, was within the jurisdiction of the United States, at all times under their protection, and amenable to their laws. An American vessel is deemed to be a part of the territory of the state within which its home port is situated, and as such a part of the territory of the United States. The rights of its crew are measured by the laws of its state or nation, and their contracts are enforced by its tribunals. * * * It would be, therefore, a singular circumstance in the legislation of the country if the act of Congress had been so framed that a subject of China, by his temporary employment on an American vessel sailing from an American port, was deprived of the right of residence acquired under the treaty with his country. Only the clearest language would justify such a conclusion. Nothing in the act requires it. Whenever the United States intend to eject any person from their jurisdiction, they will undoubtedly express their purpose in plain terms."

[3] If the appellee had remained at all times on shipboard, it would scarcely be contended that he left the United States, and the fact that he was permitted to land at Honolulu for a few hours, by the captain, did not change his status.

"The status of the petitioners and their relation to the vessel were not changed in any respect by the fact that they were permitted by the captain to land for a few hours at the port of Sydney. They were bound, by their contract of shipment, to return with the vessel, and the captain was bound to bring them back. He could not have forced them ashore in a foreign port, nor could he have abandoned them there. Had he done either of these things, he would have rendered himself liable to criminal prosecution." Case of the Chinese Laborers on Shipboard (C. C.) 13 F. 291.

For these reasons, we are of opinion that the appellee did not enter the United States unlawfully within five years prior to the attempted deportation, and the judgment of the court below is therefore affirmed.