## UNITED STATES ex rel. CLAUSSEN v. CURRAN, Commissioner of Immigration.

(Circuit Court of Appeals, Second Circuit. December 6, 1926.)

No. 96.

Aliens ⊜⟶53—Alien seaman's return from foreign voyage on American vessel held "entry," subjecting him to deportation on conviction of crime within 5 years (Immigration Act § 19 [Comp. St. § 4289¼jj]).

Where alien seaman entered United States in 1912, and thereafter sailed on American vessels, *held*, that his return in 1918 from foreign voyage was an "entry," within Immigration Act, § 19 (Comp. St. § 4289¼jj), subjecting him to deportation on conviction of crime involving moral turpitude within 5 years thereafter, notwithstanding he had taken out naturalization papers in 1919, and that his entry in 1918 was lawful.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Entry.]

Hand, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus by the United States, on the relation of Niels Peter Claussen, against Henry H. Curran, as Commissioner of Immigration. From an order discharging the writ and remanding relator to custody of immigration authorities for deportation, relator appeals. Affirmed.

Silas B. Axtell, of New York City (Charles A. Ellis, of New York City, of counsel), for appellant.

Emory R. Buckner, U. S. Atty., of New York City (Charles L. Sylvester, of New York City, of counsel), for appellee.

Before HOUGH, HAND, and MACK, Circuit Judges.

MACK, Circuit Judge. The question before us is the meaning of the word "entry" in section 19 of the Immigration Act of February 5, 1917, which provides that "any alien who is hereafter sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involv-

ing moral turpitude, committed within five years after the entry of the alien to the Unit-,ed States, * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported." Comp. St. § 4289¼jj.

If relator's entry was, as asserted by the government, in 1918, he was deportable; if in 1912, he was not deportable. The facts are undisputed. Claussen, a Danish subject, first entered this country in 1912 as a member of a crew of a British ship. He landed at Norfolk, Va. The next day he shipped on an American schooner, and, except for short periods on shore, he sailed on American vessels up to the time of his conviction in June, 1921, for manslaughter committed in May, 1921. He took out his first papers for naturalization in June, 1919. His last foreign cruise was as a member of the crew of an American schooner; he signed on for this in New York in October, 1917, and arrived back and signed off in Boston in March, 1918. During the voyage the schooner had landed at several foreign ports. Thereafter he made a few cruises in coastwise trade, and resided for a time on land in the United States.

The exact question is whether his return on the American schooner from the foreign cruise for which he had shipped from the United States is to be deemed an entry into the United States, within the above-quoted section 19 of the act. The common statement which was the basis for the decisions in the Chinese Laborer (C. C.) 13 F. 291, and Chinese Cabin Waiter (C. C.) 13 F. 286, that an American vessel is to be deemed American soil, is but a fiction, and is not of universal application. Scharrenberg v. Dollar S. S. Co., 245 U. S. 122, 38 S. Ct. 28, 62 L. Ed. 189; Cunard S. S. Co. v. Mellon, 262 U. S. 100, 43 S. Ct. 504, 67 L. Ed. 894, 27 A. L. R. 1306.

Clearly he was not in the United States during the voyage; equally clearly he enter-ed the United States in March, 1918. The question before us is neither, as in Weedin v. Banzo Okada (C. C. A.) 2 F.(2d) 321, whether within other sections of the act that entry was legal or illegal, nor, as in petition of Hersvik (D. C.) 1 F.(2d) 449, whether by making such a voyage he lost any rights given under other sections of the act to return to the United States. See, too, Ex parte T. Nagata (D. C.) 11 F.(2d) 178.

We are concerned only with the meaning of the word in connection with the deportation provision for the commission of crime, and under that section, in our judgment, the word should be given the broadest interpretation. The Weedin Case contrasting R. S. § 5363 (Comp. St. § 10468), and section 8 of the Immigration Act (Comp. St. § 4289¼dd), presented a real difficulty to the court, that had to determine the legality or illegality of entry; under the former provision the master of a vessel is criminally liable for refusing to bring his seaman, whom he has carried out, home again, whereas, under the latter provision, the master who brings an alien not lawfully entitled to enter or to reside within the country is likewise criminally liable.

In the present case we are not, however, concerned with the reconcilement of these two provisions, for, even if relator was lawfully entitled, as held in the Weedin Case, to enter the United States in 1918, his action in coming into the country was none the less an entry because it was a lawful entry, and it would be none the less an entry if he had established a definite residence within the country. Logically it follows that one who crosses the international bridge at Niagara Falls to Canada, and, after viewing the falls from the Canadian side, returns to this country, does enter the country, and if he be an alien, and thereafter within five years is convicted of a crime involving moral turpitude, he would be deportable under the section here involved.

The fact that the relator took out naturalization papers in 1919 and therefore, under the naturalization laws, would "for all purposes of protection as an American citizen be deemed such," does not aid him here. No question of protection as an American citizen is involved. The view that, because an alien seaman on an American vessel is regarded as an American seaman, in the sense that he is under the protection and subject to the laws of the United States (In re Ross, 140 U. S. 453, 11 S. Ct. 897, 35 L. Ed. 581), was held in U. S. v. New York S. S. Co., 269 U. S. 304, 46 S. Ct. 114, 70 L. Ed. 281, to have no application to the question whether such seamen come within the terms of a special statute dealing specifically with "alien seamen as such." It was there held that, for the purpose of the act then under consideration, alien seamen meant seamen who are aliens, and not seamen on foreign vessels.

The order must be affirmed.

HAND, Circuit Judge (dissenting). It seems to me that there is strong reason to distinguish the return of a seaman at the end of a voyage for which he has signed the articles, and on the same ship on which he left, from a re-entry one has not bound oneself to make when one went away. A seaman is bound for the voyage, once he signs on; desertion is at.

least a civil wrong. To say that every coasting vessel or fishing smack which passes the league limit subjects all aliens on board to all conditions of admission into the United States, including, I should suppose, the quota law, seems to me an impracticable interpretation of the law; yet I can see no escape from it, if my brothers are right. It means that American crews must be made up of citizens and citizens only. That I should have thought was the opposite of the plain intention of Congress as respects our mercantile marine.

Nor can I see that we can escape considering the conflicts which our ruling raises with other statutes because they are not before us here. I can see no answer to the dilemma put by Rudkin, J., in Weedin v. Banzo Okada (C. C. A. 9) 2 F.(2d) 321, and that case is flat for the relator at bar. I agree that Chinese Cabin Waiter, 13 F. 286, and Chinese Laborers on Shipboard, 13 F. 291, arose under other statutes; but, for all that, if there is any principle in the matter at all, they, too, are in point. While I set no store upon the doctrine of an American ship as American soil, I do think that we should not apply this statute literally, but rather with an eye to the purpose for which it was intended.

I vote to reverse.