**UNITED STATES ex rel. BARDAKOS v. MUDD, Commissioner of Immigration (two cases).**

District Court, D. Maryland.    June 14, 1929.

Nos. 3965, 3966.

Soterios Nicholson, of Washington, D. C., for petitioners.

Amos W. W. Woodcock, U. S. Atty., of Baltimore, Md., for Commissioner.

WILLIAM C. COLEMAN, District Judge. The two petitioners, brothers and citizens of Greece, are before the court on petitions for writs of habeas corpus. Having declared their intention to become American citizens and having presented themselves for naturalization, they were apprehended—Nicholas on March 5, 1929, and Andreas on March 11, 1929—by the immigration authorities on warrants of deportation on the ground that they were unlawfully in the United States. After due hearing before the immigration authorities, they were ordered deported but were released under bond.

The material facts in each case will be considered separately. First, with respect to petitioner Nicholas Bardakos, it appears that he first entered the United States as an alien seaman on board a Greek vessel at the port of New York in August, 1917. From then until May, 1926, he shipped from time to time on various American vessels in foreign service, the last of these foreign voyages being made on the steamship Hugoton which the petitioner left at New York on May 31, 1926. Thereafter, until September, 1926, petitioner was hospitalized in Baltimore for medical treatment. In April, 1927, he shipped for the first time on coastwise vessels on the Great Lakes, that is to say, he was invalided for a period of approximately six months, and from that time until the date of his arrest, he shipped coastwise whenever he could obtain employment in that trade, which was not possible in the winter months, so during the intervals he claims to have worked in restaurants in Baltimore.

The material facts respecting Andreas Bardakos are these: He first entered the United States in 1920, and thereafter until February, 1927, the date of his last entry, he shipped from time to time on American ships in foreign service, and then he shipped coastwise on the Great Lakes. He continued in the coastwise trade, whenever able to obtain employment, until his arrest. During the winter months he claims to have obtained employment in restaurants in Baltimore.

The contention of petitioners is that they never abandoned their calling as seamen, and therefore that they are not subject to deportation.

Bona fide seamen are not immigrants within the definition of the Immigration Act of 1924, for section 3 of that act defines an immigrant as an alien departing from any place outside the United States, but expressly excepts (subdivision 5) a seaman seeking to enter temporarily into the United States solely in pursuit of his calling as such (8 USCA § 203). Sections 14 and 15 (8 USCA §§ 214, 215) of the same act provide that any alien seaman after lawful entry into the United States who remains for a longer period than that permitted under the act, or regulations passed pursuant thereto, shall be taken into custody and deported as provided by the Act of 1917 (8 USCA §§ 155, 156). This act provides for his deportation at any time within five years after entry. See United States ex rel. Rios v. Day (C. C. A.) 24 F.(2d) 654. Pursuant to authority vested in it, as aforesaid, the Bureau of Immigration promulgated the following

regulation, which was in effect at the time of the last entry of each of the petitioners: "Where a bona fide alien seaman, serving as such on a vessel arriving at a port of the United States, and permitted to enter temporarily the United States as a nonimmigrant pursuant to subdivision (5) of Section 3 of the immigration act of 1924 solely in pursuit of his calling as a seaman, engages in any other calling or occupation for hire or profit, or enters into the coastwise trade of the United States, or remains within the United States for more than 60 days after such entry, he shall be deemed to have abandoned his status as a nonimmigrant within the meaning of said subdivision (5) of section 3 of the immigration act of 1924, and shall be taken into custody and deported at any time thereafter in accordance with the provisions of section 14 of said act." Bureau of Immigration Rules, March 1, 1927, subdivision I, par 2.

There can be no question, in view of the above provisions of the law, of the power of the Bureau of Immigration to pass the aforegoing regulation; nor can there be any real doubt as to whether what each of the petitioners did amounted to an abandonment of his status as a nonimmigrant, within the meaning of the law and the regulation, because such meaning is too clearly expressed to permit of any ambiguity. The regulation provides that a seaman shall be deemed to have abandoned his status under any one of three conditions: If he (1) "engages in any other calling or occupation for hire or profit," or (2) "enters into the coastwise trade of the United States," or (3) "remains within the United States for more than 60 days after such entry." Since it is admitted that both the petitioners had entered the coastwise trade, it becomes unnecessary for us to determine whether their illness and their engaging in temporary nonmaritime work take the petitioners out of the first and third of the stipulated conditions. Therefore the only question that remains for decision is: "What constituted the 'entry' of each petitioner from which is to be computed the five-year period within which their deportation is permissible under the law?"

This question has been squarely answered by the Supreme Court in United States ex rel. Claussen v. Day, 49 S. Ct. 354, 73 L. Ed. ——, wherein it was held that if an alien seaman ships from the United States to foreign ports, he makes a new entry, within the meaning of the Immigration Act, each time he returns to the United States. Therefore, the period of limitations must run

from the date of the last entry of these petitioners, namely, May 31, 1926, and February, 1927, respectively. It follows, therefore, that the action of the immigration authorities was well within the statutory period, and being otherwise entirely regular, the petitions must be dismissed. Parenthetically, it may be pointed out that even if it be assumed that section 34 of the 1917 Act (8 USCA § 166) applies to the present cases as contended by petitioners (which cannot, as a matter of fact, be applicable because it relates only to alien seamen who *enter into, not to those who remain in* the United States, unlawfully), the three-year period therein prescribed for deportation has not expired.

If it be argued that the regulations appear to be unduly harsh, it is sufficient to say that the court cannot concern itself with the wisdom of the given law or regulations passed in conformity thereto. Congress has plenary power over immigration and naturalization. Alien seamen enjoy special privileges, but those privileges are only accorded upon strict compliance with the regulations which must be rigid for the health and safety of our citizens as a whole.

The court has been referred to a number of decisions upon which it is unnecessary to comment, other than to say that many of these are in conflict with the Claussen Case, and the others are not applicable to the present facts.

The writs must therefore be denied.