**Ex parte TATSUO SAIKI.**

**Ex parte HYOICHI OHASHI.**
Nos. 20434, 20435.

District Court, W. D. Washington, N. D.
Dec. 15, 1930.

Henry A. Monroe and Fred H. Lysons, both of Seattle, Wash., for petitioners.

Anthony Savage, U. S. Atty., and Hamlet P. Dodd, Asst. U. S. Atty., both of Seattle, Wash., for respondent.

NETERER, District Judge.

The legal questions as to each petitioner are identical and will be disposed of together. Both are natives of Japan.

Saiki, a common laborer, arrived at the port of Seattle, as a member of a crew of the steamer Meiko Maru, April, 1917, and deserted while on shore leave, and claims never to have left the United States.

Ohashi, a common laborer, arrived at the port of Aberdeen, United States, January, 1920, as a seaman, deserted while on shore leave, and claims not to have left the United States since.

On the 12th of March, 1930, both petitioners sailed from the port of Seattle as passengers on board the steamship Admiral Evans, destined for Alaska. The vessel en route called at the port of Ladysmith, B. C., March 13, at which port it stopped for less than ten hours. The petitioners did not leave the ship. On March 16, 1930, the vessel arrived at Katchikan, Alaska; afterwards, each of the petitioners was duly arrested by the immigrant inspector under authority of warrant issued by the Assistant Secretary of Labor, September 19, 1930. After a due and regular hearing thereafter, warrant of deportation was issued by the Assistant Secretary of Labor, commanding the return of each of the petitioners to Japan.

No unfairness in the hearing of either of the petitioners is charged. The only issue is whether the Assistant Secretary of Labor misconstrued the law as applicable to the petitioners in ordering the deportation. The petitioners contend, having purchased transportation from Seattle to Ketchikan on an American vessel, over the navigation of which they have no control, the entry in British ports en route does not interrupt the continuity of their residence in the United States, in which they have been resident for ten years or more.

Petitioners rely on Weedin v. Okada (C. C. A.) 2 F.(2d) 321; In re Kogi Saito (D. C.) 18 F.(2d) 116. The issues in these cases are controlled by United States ex rel. Claussen v. Day, 279 U. S. 398, 49 S. Ct. 354, 73 L. Ed. 758.

Section 203, title 8, USCA, provides: "When used in this subchapter the term 'immigrant' means any alien departing from any place outside the United States destined for the United States. * * *"

Section 213: "No immigrant shall be admitted to the United States unless he (1) has an unexpired immigration visa. * * *"

Section 1 of Act Feb. 5, 1917 (8 USCA § 173) provides: "The term 'United States' [as used in the act] shall be construed to mean the United States, and any waters, territory, or other place subject to the jurisdiction thereof, except the Isthmian Canal Zone."

The waters of Ladysmith, B. C., were not subject to the jurisdiction of the United States.

The Supreme Court in United States ex rel. Claussen v. Day, supra, says: " * * * The word 'entry' by its own force implies a coming from outside. * * *"

It is clear that the vessel came from a foreign port with the petitioners on board, and it would appear from the definition of the "United States," which the Congress was qualified to give, when the vessel entered the port of Ladysmith, the waters of which are under foreign jurisdiction, that the petitioners were stripped of all residential qualities in the United States, and were without the United States, and, on returning, came within the United States. The Claussen Case, supra, was decided by the Supreme Court May 13, 1929, whereas the cases above named and relied on by the petitioners were decided in 1927 and 1924. There does not appear to be any distinction between these instant cases and the Claussen Case, except that, in the Claussen Case the petitioner was away a longer period of time. The Supreme Court concludes the decision by saying: "And it is clear that petitioner departed from the United States on the Elisha Atkins and that, when he landed at Boston on his return from South American and Cuban ports, he made

an entry into the United States within the meaning of the act."

The writ in each case is denied.