## UNITED STATES ex rel. WILLIAMS v. KARNUTH.

No. 1012.

District Court, W. D. New York.
Jan. 13, 1933.

George B. Doyle, of Buffalo, N. Y., for petitioner.

Richard H. Templeton, U. S. Atty., and Willard R. Chamberlin, Asst. U. S. Atty., both of Buffalo, N. Y.

KNIGHT, District Judge.

This is an application through a writ of habeas corpus for the discharge of relator held on a warrant of deportation. The record of proceedings before the immigration inspector shows that relator, an alien, arrived in the United States about June 15, 1923. He was taken from the vessel on which he arrived as a member of the crew because of illness, and has remained in this country except for numerous trips to Canada during the summer of 1932 while working on a boat plying between Buffalo, N. Y., and Crystal Beach, Ontario. According to his testimony, his last entry in the United States was made on August 29, 1932. He was ordered deported by the Department of Labor on the ground that at the time of his entry he was not in possession of an unexpired immigration visa. Title 8 USCA § 213 (a), provides that "no immigrant shall be admitted to the United States unless he (1) has an unexpired immigration visa."

An immigrant is defined in section 203 as "any alien departing from any place outside the United States destined for the United States." The term "United States" is defined in section 173 as "the United States, and any waters, territory, or other place subject to the jurisdiction thereof, except the Isthmian Canal Zone. * * * " Section 214 provides that: "Any alien who at any time after entering the United States is found to have been at the time of entry not entitled under this subchapter to enter the United States, or to have remained therein for a longer time than permitted under this subchapter or regulations made thereunder, shall be taken into custody and deported in the same manner as provided for in sections 155 and 156 of this title."

The question here involved is whether Williams on August 29, 1932, departed from a place outside the United States and entered the United States. This court decided a similar case a few years ago. In the Matter of Application of Joseph Marinarro for a Writ of Habeas Corpus, 2 F. Supp. 117. In that case it appears that the alien was employed as deckhand aboard a boat plying between Buffalo and Crystal Beach. There it was claimed that petitioner never landed in Canada, but returned to Buffalo aboard the vessel. The court, on the authority of United States ex rel. Claussen v. Curran (C. C. A.) 16 F. (2d) 15, affirmed U. S. ex rel. Claussen v. Day, 279 U. S. 398, 49 S. Ct. 354, 73 L. Ed. 758, said: "When the relator became a deck hand on an American steamer (it makes no difference that the steamer was of American registry, see 16 F. (2d) 15) plying between Buffalo and Crystal Beach and returned on the same day on the same ship in his capacity as deck hand, there existed an arrival on his part from a foreign port or place." The writ was dismissed. In U. S. ex rel. Anderson v. Karnuth (D. C.) 46 F. (2d) 689, 690, decided in this district, it was held that an alien seaman entering a coastwise trade abandoned his status as a nonimmigrant, and it was said: "It is true that a voyage by an alien seaman on an American ship and return to this country without having been in any foreign port or place would not be an entry; yet when an American vessel departs from the United States to a foreign port or place and the alien seaman returns on the same ship to the United States, he 'enters,' as that term was recently defined by the Supreme Court of the United States in U. S. ex rel. Claussen v. Day, 279 U. S. 399, 49 S. Ct. 354, 73 L. Ed. 758." In U. S. ex rel. Claussen v. Day, supra, the Supreme Court held that an American vessel outside the United States, whether on the high seas or in foreign waters, is not a place included within the United States as defined by the act. The court did state that there is no entry where one goes to sea on an American vessel from a port of the United States and returns to the same or another port of this country without having been in any foreign port or place, but that statement is not in point in this case where the vessel did put in at a foreign port.

In McCandless, Com'r, v. United States ex rel. Pantoja et al. (C. C. A.) 44 F. (2d) 786, 787, relator shipped on an American steamship from New York to Buenos Aires, and without disembarking returned to New York. It was held that such entry at New York was illegal. In United States ex rel. Lehtola v. Magie, County Sheriff, et al. (D. C.) 47 F. (2d) 768, the alien relator shipped as a sailor from the United States to a port in Ontario. He remained ashore only two hours and then returned to the United States. It was held that this constituted a re-entry. To the same effect and similar in material facts is United States ex rel. Medich v. Burmaster,

Immigration Inspector (C. C. A.) 24 F.(2d) 57. Vide also United States ex rel. Bardakos v. Mudd, Commissioner (D. C.) 33 F.(2d) 334; United States ex rel. Harrington v. Mc-Candless, Commissioner (D. C.) 43 F.(2d) 760.

Another case involving similar facts is Ex parte Tatsuo Saiki (Ex parte Hyoichi Ohashi) (D. C.) 49 F.(2d) 469, 470. Petitioners were seamen who deserted while on shore leave and had resided continuously in the United States from 1917 and 1920, respectively. They sailed from Seattle in 1930 bound for Alaska. The vessel called at the port of Ladysmith, B. C., and laid over for ten hours at that port, but no landing was effected by petitioners. They were arrested after arrival in Alaska and ordered deported. The court, after citing sections 203, 213, and 173, supra, stated: "It is clear that the vessel came from a foreign port with the petitioners on board, and * * * when the vessel entered the port of Ladysmith, the waters of which are under foreign jurisdiction, that the petitioners were stripped of all residential qualities in the United States, and were without the United States, and, on returning, came within the United States." These writs were also denied.

It thus appears that any rights acquired by petitioner as the result of his residence here prior to his trips on the Crystal Beach boat were relinquished at that time, and on returning to the United States he came as an immigrant and was required to have an unexpired immigration visa.

Supplementing his petition, relator has submitted an affidavit setting forth additional facts which he wishes to present at a rehearing. The facts in regard to the entry not contained in the record, but set forth in the affidavit, are that the boat docks at the Crystal Beach merely long enough to allow passengers to get off and to board the boat; that deponent was denied shore leave, and at no time presented himself to the Canadian Immigration customs officials or the American immigration or customs officials at Crystal Beach; and that the boat is not obliged to pass inspection either at Buffalo or Crystal Beach. The deponent's desire to remain in this country and the fact that he never intended to leave are also set forth. I cannot see that there is anything in this affidavit which changes the case as presented by the record.

I am not unaware of the decisions in Ex parte Kogi Saito (D. C.) 18 F.(2d) 116, Matsutaka v. Carr (C. C. A.) 47 F.(2d) 601, Weedin v. Banzo Okada (C. C. A.) 2 F.(2d) 321, Petition of Hersvik (D. C.) 1 F.(2d) 449, Ex parte T. Nagata (D. C.) 11 F.(2d) 178, and I am mindful of that portion of the opinion in United States ex rel. Claussen v. Curran, Commissioner of Immigration, 16 F.(2d) 15, 16, Second Circuit, affirmed on appeal, which states: "The question before us is neither, as in Weedin v. Banzo Okada (C. C. A.) 2 F.(2d) 321, whether within other sections of the act that entry was legal or illegal, nor, as in Petition of Hersvik (D. C.) 1 F.(2d) 449, whether by making such a voyage he lost any rights given under other sections of the act to return to the United States. See, too, Ex parte T. Nagata (D. C.) 11 F.(2d) 178." This language was also quoted in U. S. ex rel. Rios v. Day, Commissioner (C. C. A.) 24 F.(2d) 654. It is true there is conflict in the conclusion at which I arrive with certain of these other decisions. It seems to me that my decision is controlled by United States ex rel. Claussen v. Day, 279 U. S. 398, 49 S. Ct. 354, 73 L. Ed. 758, in which the relator was employed in coastwise trade as a seaman and shipped from New York for a voyage to South America and on his return landed in Boston. The court held that the word "entry" implies a coming from outside, and that, when the relator landed at Boston from a foreign port, he made an entry within the meaning of the statute.

As stated by this court in U. S. ex rel. Ferraro v. Karnuth, 2 F. Supp. 315, the extent of the jurisdiction of this court lies in determining whether or not the petitioner was given a fair hearing and whether or not the charges are supported by the evidence. It is clear that the petitioner was given a fair hearing and that there is evidence to sustain the charges on which the warrant of deportation is based. This court must therefore deny the writ.