**Felix Sarzona MONTALBAN, Plaintiff,**

**v.**

**Herbert BROWNELL, Jr., Attorney General of the United States, Defendant.**

**Civ. A. 223–56.**

United States District Court
District of Columbia.

Dec. 24, 1957.

Jack Wasserman and David Carliner, Washington, D. C., for plaintiff.

Oliver Gasch, U. S. Atty., Edward P. Troxell, Principal Asst. U. S. Atty., E. Riley Casey and William R. Rafferty, Asst. U. S. Attys., Washington, D. C., for defendant.

MATTHEWS, District Judge.

This is an action for a declaratory judgment to review an order of the Attorney General refusing to adjust the status of the plaintiff to that of an alien lawfully admitted for permanent residence under Section 244(a) (1) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1254(a) (1).

Under the Section in question the Attorney General in his discretion may suspend deportation and adjust the status of an alien who applies therefor and meets the eligibility requirements for such relief. Among other things such an alien must have

"last entered the United States more than two years prior to June 27, 1952; * * * and have been physically present in the United States for a continuous period of not

less than seven years immediately preceding the date of such application * * *."

The plaintiff is a native and citizen of the Philippine Islands. He first arrived in the United States in 1945. From 28 to 30 times he entered and departed from this country. His entries were always as a non-immigrant seaman or crewman. In 1952 he married a national of his own country who had entered the United States as a temporary visitor. His last admission to the United States was at San Francisco in October 1953 for a period not exceeding 29 days. He overstayed the period for which he was admitted and accepted employment ashore, thereby failing to comply with the conditions of his status as a non-immigrant crewman. In February 1955 a warrant was issued for his arrest in deportation proceedings. He applied for suspension of deportation alleging that deportation would result in exceptional and unusual hardship to him and his citizen child and lawful resident father. The Special Inquiry Officer denied the application for suspension of deportation on the ground that the requirement for continuous physical presence in the United States for seven years had not been established. The deportation of the alien was directed in the event he should fail to depart voluntarily. His appeal to the Board of Immigration Appeals was dismissed, the Board having found him ineligible for suspension of deportation because "he has not been physically present in the United States for a continuous period of seven years" and his "last entry occurred subsequent to June 27, 1952" and not more than two years prior to that date as required by the above quoted Section. This action was then filed.

A definition of "United States" is given in the Act, 8 U.S.C.A. § 1101(a)(38), as follows:

"The term 'United States', except as otherwise specifically herein provided, when used in a geographical sense, means the continental United States, Alaska, Hawaii, Puerto Rico, Guam, and the Virgin Islands of the United States."

The plaintiff contends, however, that in the Section dealing with suspension of deportation the term "United States" has not been used in a geographical sense but in a political or legal sense, and that it should be interpreted to include American vessels at sea.

It is the theory of the plaintiff that his presence on board vessels flying the flag of the United States should be counted as physical presence in the United States and added to the time he resided within the continental limits of the United States in which event he would be eligible for the relief he seeks, that is, he would have been physically present in the United States for a continuous period of seven years and the Attorney General would be authorized to adjust his status to that of an alien lawfully admitted for permanent residence.

The administrative record in this case was admitted in evidence and discloses the sailings of the plaintiff on American vessels. These sailings are not limited to ships which went from a port of the United States and returned to the same or another port of this country without having been in any foreign port or place. In April 1952 the plaintiff sailed from San Francisco for Japan, arriving at Yokohama in May, and leaving there in June for San Francisco, the voyage both ways being on United States ships. As already stated, the alien last entered the United States in October 1953. At that time his arrival was from the port of Keelung, Formosa.

If the plaintiff had any residential qualities in the United States he was stripped of them when he entered a foreign port. Hence his subsequent return to the United States from a foreign port was not a continuation of any previous residence in this country but constituted a new entry. United States ex rel. Claussen v. Day, 279 U.S. 398, 49 S.Ct. 354, 73 L.Ed. 758; United States ex rel. Stapf v. Corsi, 287 U.S. 129, 53 S.Ct. 40, 77 L.Ed. 215; McCandless v. United States, ex rel. Pantoja, 3 Cir., 44 F.2d

786; Ex parte Tatsuo Saiki (Ex parte Hyoichi Ohashi), D.C., 49 F.2d 469; United States ex rel. Williams v. Karnuth, D.C., 2 F.Supp. 316; United States ex rel. Roovers v. Kessler, 5 Cir., 90 F.2d 327; United States v. Maisel, 3 Cir., 183 F.2d 724. He is not eligible for suspension of deportation and adjustment of his status as he has failed to establish that he was physically present in the United States for a continuous period of seven years and that his last entry was more than two years prior to June 27, 1952.

Accordingly, the complaint of the plaintiff will be dismissed. Counsel may submit a proposed judgment.