**PROJECT RELEASE, Individually and on behalf of its members and all others similarly situated, Carrie Greene, Individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**James PREVOST, Individually and as Commissioner of the New York State Department of Mental Hygiene and Office of Mental Health, Defendant.**

No. 78 C 1467.

United States District Court,
E. D. New York.

Dec. 29, 1978.

**1034**

New York Civil Liberties Union, New York City, for plaintiffs, by Christopher A. Hansen, Robert Morris Levy, New York City.

Louis J. Lefkowitz, Atty. Gen. of the State of N. Y., New York City, for defendant, by Robert S. Hammer, Robert J. Schack, New York City (William A. Carnahan, and John Aveni, Department of Mental Hygiene, Albany, of counsel).

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This civil rights action, brought pursuant to 42 U.S.C. § 1983 and its jurisdictional counterpart 28 U.S.C. § 1343(3), challenges the constitutionality of the standards for civil commitment of mentally ill persons embodied in various provisions of the New York Mental Hygiene Law ("MHL") and the procedures used in such commitments. Specifically, the action is brought to declare MHL §§ 9.13, 9.27 and 9.39 unconstitutional and to enjoin their enforcement to the extent they are declared constitutionally inadequate.[1]

Plaintiffs are a non-profit corporation ("Project Release") suing individually and

---

1. Plaintiffs also seek a declaration that MHL § 29.09(b) is unconstitutional to the extent it requires the Mental Health Information Service to act in dual capacities as counsel for the patient and independent investigator for the courts (Complaint ¶ 18(c)).

on behalf of its members, and an individual ("Carrie Greene") currently committed to Creedmoor Psychiatric Center. They seek to maintain the action as representatives of a class variously described as "all persons who have been or may in the future be involuntarily committed to mental hospitals" (Complaint ¶ 5) and as "all individuals who are or have been confined in all facilities operated by the New York State Department of Mental Hygiene" (Plaintiffs' Memorandum in Support of Motion for Class Certification at 4). The defendant is the Commissioner of the New York State Department of Mental Hygiene. Motions for class certification have been held in abeyance pending disposition of the motion to dismiss now before the court.

Plaintiffs allege that the substantive standards for involuntary commitment contained in the MHL are constitutionally vague and overbroad. Section 9.13 provides for voluntary admission of "any suitable person in need of care and treatment" who makes a written application therefor. Such a "voluntary" patient shall be released upon written application on three days notice unless the director within that time seeks a court order to retain the patient on the ground that he is "in need of involuntary care and treatment." [2] Section 9.27 permits involuntary admission of anyone "alleged to be mentally ill and in need of involuntary care and treatment" upon certification by two examining physicians, the application of one of the patient's friends, or relatives, or of an official of a public or voluntary agency, and an examination by a member of the psychiatric staff of the hospital.[3]

Section 9.39 provides for "emergency" 15-day admission to a proper facility of "any person alleged to have a mental illness for which immediate observation, care, and treatment" is appropriate and "which is likely to result in serious harm to himself or others." The phrase "likelihood to result in serious harm" is defined in the article as:

"(1) substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself, or

"(2) a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm." [4]

These provisions of the MHL are allegedly infirm in that they permit commitment of persons who do not meet the following standard:

"(a) The person has a serious mental disorder, and

"(b) The person's disorder is susceptible to treatment by existing medical or psychological techniques, and

"(c) Adequate personnel and other resources exist at the proposed facility to provide such treatment as will afford the person with a realistic opportunity to be cured or to improve, and

"(d) The person presents a substantial and present risk of serious physical harm to himself or others, and

"(e) The person has recently committed an act which caused or reasonably should have caused serious physical harm to himself or others, and

2. The statute also provides for periodic applications for retention of the patient and procedures for requesting and obtaining the release of a patient under eighteen. See MHL § 9.13(b).

3. Requirements of notice and hearing applicable to the retention of patients involuntarily committed under this section are set forth in MHL §§ 9.29, 9.31, 9.33 and 9.35.

4. Commitment may be made upon the examination by a staff physician if, within 48 hours, the finding of need for admission is confirmed by the examination of a staff psychiatrist.

The section also provides for notice of the patient's admission and a statement of his rights to be given to the patient, to MHIS and to up to each of three persons selected by the patient. Demand for a hearing with respect to the patient's need for hospitalization may be made by anyone; the hearing must be held within five days of the demand. At the end of the initial fifteen day period, the patient must be discharged unless he agrees to remain as a voluntary or informal patient, see MHL § 9.15, or is committed pursuant to procedures for commitment of involuntary patients.

"(f) The person cannot receive the necessary help in any less restrictive setting." (Complaint ¶ 17.)

The complaint further alleges that the provisions are procedurally defective and deny due process in that they fail to provide such persons the following protections:

"(a) They were and are not provided a probable cause judicial hearing within 48 hours of confinement;

"(b) They were and are not provided an automatic judicial review of their need for confinement within 5 days of confinement;

"(c) They are not provided with adequate counsel (specifically, the Mental Health Information Service does not provide adequate counsel in part because in most of the state it is required to provide services as counsel to patients and as an independent investigator for the court by § 29.09(b));

"(d) They are confined without the state's having to prove their need for confinement beyond a reasonable doubt;

"(e) They are confined without adequate notice of the specific facts which have led to their confinement. Specifically, they are not permitted access to even their own hospital records;

"(f) They are confined based upon their own statements without having been warned of their right to remain silent;

"(g) They are often given drugs and other treatment against their will upon admission that make it very difficult or impossible for them to assert their rights or for them to appear at a hearing in an unprejudicial manner." (Complaint ¶ 18.)

Finally, plaintiffs seek a declaration of unconstitutionality of MHL § 29.09(b) to the extent that it requires the Mental Health Information Service to act as both counsel for the patient and as an independent investigator for the courts (Complaint ¶ 18(c).

Defendant moves to dismiss pursuant to Rule 12(b), F.R.Civ.P., on grounds that (1) the named defendant lacks personal responsibility for commitment of persons to New York mental hospitals; (2) plaintiffs have failed to join the Mental Health Information Service as a party defendant; (3) plaintiffs have failed to exhaust State judicial remedies; and (4) they lack standing to challenge MHL §§ 9.13 and 9.39. For the following reasons, defendant's motion is denied in all respects.

*The Commissioner is a Proper Party*

Defendant argues that § 1983 creates a cause of action against the *person* responsible for the deprivation of another's constitutional rights and that, before liability can be imposed, there must be some showing of personal responsibility for the complained of acts. For this proposition, he cites authority in this circuit. See *Duchesne v. Sugarman,* 566 F.2d 817, 830 (2 Cir. 1977); *Arroyo v. Schaefer,* 548 F.2d 47, 51 (2 Cir. 1977); *William v. Vincent,* 508 F.2d 541, 546 (2 Cir. 1974); *Johnson v. Glick,* 481 F.2d 1028, 1034 (2 Cir. 1973). Since the complaint neither alleges that defendant personally directed his subordinates to deprive plaintiffs of their constitutional rights nor specifies that he had knowledge of such deprivations and acquiesced in them, defendant contends plaintiffs have not stated a claim upon which relief can be granted. Defendant, in addition, appears to claim that this action is barred by the doctrine of qualified immunity for executive branch State officials. These arguments lack merit.

First, the cases cited by defendant are inapposite. While it is true that "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983," *McKinnon v. Patterson,* 568 F.2d 930, 934 (2 Cir. 1977), the rule is limited to cases in which damages are sought and is plainly inapplicable where, as here, plaintiffs seek declaratory and injunctive relief against the operation of allegedly unconstitutional State statutes. In such actions, it has long been the law that officials are amenable to suit in their official capacities. See, e. g., *Ex parte Young,* 209 U.S.

123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Edelman v. Jordan,* 415 U.S. 651, 663–68, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). See also *Arthur v. Nyquist,* 573 F.2d 134, 139–40 (2 Cir. 1978); *Aristocrat Health Club of Hartford v. Chaucer,* 451 F.Supp. 210, 213 (D.Conn.1978). Although defendant may not have been directly involved in acts pursuant to the allegedly unconstitutional scheme, he may be held responsible in these circumstances for the acts of his subordinates for purposes of injunctive and declaratory relief. See *Hupart v. Board of Higher Education of City of New York,* 420 F.Supp. 1087, 1108 (S.D.N.Y.1976).[5] Thus, whether or not Commissioner Prevost has jurisdiction over the actual admission and discharge of patients—which has been placed in issue by defendant[6]—it is certain that he is responsible for the Office of Mental Health and in such capacity has general supervisory authority over the State's mental health commitment program. See, *e. g.,* MHL §§ 7.07(c), 7.09(a), 7.11 and 7.15(a). He is therefore a proper defendant and amenable to suit.

Since there is some question, at least in defendant's view, that the Commissioner does not exercise complete authority over the admission and discharge process, it is perhaps best at this early stage of the litigation to grant plaintiffs' alternative request to add as a party-defendant a hospital director so as to assure plaintiffs complete relief should they prevail on the merits in this action. This should not unduly complicate the action[7] and might later prove necessary to provide complete relief to plaintiffs. Plaintiffs, therefore, are granted leave pursuant to Rule 21, F.R.Civ.P., to serve their proposed amended complaint adding Nicholas Dubner, Director of Creedmoor Psychiatric Center, as a party-defendant. Plaintiffs' request that the director be certified as a class representative, however, will be held until determination of the other certification issues.

Finally, with respect to defendant's argument that an asserted qualified immunity from suit requires dismissal of the complaint, it is sufficient to state that this doctrine is inapplicable in a suit for declaratory or injunctive relief. See, *e. g., Rowley v. McMillan,* 502 F.2d 1326, 1331 (4 Cir. 1974); *Richmond Black Police Officers*

---

**5.** The proposition that § 1983 requires strictly individuated proof of personal responsibility for unconstitutional acts has recently been rejected in this circuit in a civil rights action for declaratory and injunctive relief against city officials sued in their official capacities. *Arthur v. Nyquist,* 573 F.2d 134 (2 Cir. 1978). The Court of Appeals read *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), as upholding the right to sue city officials established in school desegregation cases in which "no such theory of individuated jurisdiction or liability was apparently advanced." *Arthur v. Nyquist, supra* at 140 (footnote omitted).

Although *Arthur* involved the desegregation of the school system in Buffalo, its teaching is applicable here. Where the attack is on the operation and effect of an allegedly unconstitutional State statute or practice systematically carried out by State officials, rather than on the isolated acts of individual officials, *Rizzo* is no bar to the action.

We note also that the court in *Arthur* reversed the lower court's finding of liability on the part of various State defendants. It determined that *Rizzo* required a more direct link between the illicit school segregation and an intentional policy adopted by the State defendants approving the illicit action. It concluded that inaction would not be tantamount to inten-

tional segregation such as to constitute a constitutional violation. Here, however, plaintiffs have named those with a direct link to the allegedly unconstitutional scheme, in fact, those who operate daily under the statutes in issue. *Cf. New York State Association for Retarded Children v. Rockefeller,* 357 F.Supp. 752 (E.D.N.Y.1973). We believe that, under the circumstances of this case, defendants are properly named even under the requirements set forth in *Rizzo.*

**6.** Defendant relies on MHL § 9.03 which provides that

"[u]nless otherwise specifically provided for by statute, a mentally ill person shall be admitted to a hospital as an in-patient only pursuant to the provisions of this article . . . . ."

and Article 9 of the MHL which vests responsibility for admission and retention of patients in the director of the hospital to which admission or retention is sought.

**7.** Indeed the State Attorney General and Department of Mental Hygiene now representing the Commissioner will in all likelihood undertake representation of the newly-named director.

*Ass'n v. City of Richmond,* 386 F.Supp. 151, 154 (E.D.Va.1974); *Saffioti v. Wilson,* 392 F.Supp. 1335, 1343 n. 10 (S.D.N.Y.1975). While defendants in *McKinnon v. Patterson, supra,* did enjoy qualified immunity from damage actions, this immunity did not prevent entry of a declaratory judgment that defendants had acted in an unconstitutional manner. Even assuming the applicability of an immunity defense, moreover, it is difficult to appreciate its relevance before issue has been joined. The defense is prematurely presented.

### Dismissal For Failure to Join a Necessary Party

Paragraph 18(c) of the complaint asserts that plaintiffs were and are unconstitutionally confined in violation of their rights to procedural due process in that "[t]hey are not provided with adequate counsel (specifically, the Mental Health Information Service does not provide adequate counsel in part because in most of the state it is required to provide services as counsel to patients and as an independent investigator of the court by [MHL] § 29.09(b))." Plaintiffs seek a declaration that this provision is constitutionally invalid (Prayer for Relief ¶ 2). Their failure to join as a party defendant the director of the agency in the second department is alleged as a basis for dismissal under Rules 12(b)(7) and 19, F.R. Civ.P.

Rule 19, however, contemplates dismissal only where a party should have been joined, cannot be made a party, and "whose presence is indispensable to the rendition of equitable judgment."[8]

Plaintiffs suggest that most, if not all, MHIS directors could be made parties without disturbing this court's jurisdiction. Moreover, they assert only a small portion of the complaint is affected by their failure to join the directors, and the named defendant in any event can provide "complete relief." See Rule 19(a), F.R.Civ.P. Rather than dismissal of the complaint, joinder of the directors is appropriate, they argue, if the court determines the directors are necessary for the resolution of this matter.

■ Defendant's argument is apparently based on what he considers the "central role of MHIS" in the admission and retention of the mentally ill and the protection of their rights; the absence of the MHIS directors would presumably preclude complete relief in the event plaintiffs prevail. It is unnecessary for the court to decide this question in the abstract at this time, for it is of opinion that, as with the hospital director, it is best to grant plaintiffs leave to add the MHIS directors as parties-defendant and to serve an amended complaint to reflect the additions. This will assure that a judgment rendered in plaintiffs' favor will run unquestionably against those in positions to comply with its terms. *Cf. Fair Housing Development Fund Corp. v. Burke,* 55 F.R.D. 414, 418–19 (E.D.N.Y.1972).

### Failure to Exhaust State Judicial Remedies

Defendant also urges dismissal on the ground that this action is, in effect, one sounding in habeas corpus because it seeks plaintiffs' immediate release from confinement and thus falls within the requirement of exhaustion of State judicial remedies. 28 U.S.C. § 2254(b). See *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Plaintiffs contend they do not seek immediate or speedier release from confinement; rather, they seek constitutional substantive standards and procedures for commitment and envision State court proceedings in which their confinement would be tested under constitutionally permissible standards.

■ In support of this position, plaintiffs provide commitment cases in which *Preiser* exhaustion arguments were rejected. See *Goldy v. Beal,* 429 F.Supp. 640 (M.D.Pa. 1976) (three-judge court); *Gomez v. Miller,* 341 F.Supp. 323 (S.D.N.Y.1972), *aff'd,* 412 U.S. 914, 93 S.Ct. 2728, 37 L.Ed.2d 141 (1973) (after the decision in *Preiser v. Rodriguez*). They also offer cases challenging

---

8. 3A Moore's Fed.Prac. ¶ 19.19 at 345.

parole decision making in which the Court of Appeals for this circuit has held that such challenges are properly brought under 42 U.S.C. § 1983 rather than in habeas corpus jurisdiction. See *Haymes v. Regan,* 525 F.2d 540, 542 (2 Cir. 1975); *Williams v. Ward,* 556 F.2d 1143, 1150 (2 Cir. 1977). See also *Cicero v. Oligiati,* 410 F.Supp. 1080, 1084 (S.D.N.Y.1976).

We conclude, following this ample precedent, that *Preiser* is inapplicable to this action and therefore plaintiffs may proceed without first exhausting available State remedies. Moreover, members of plaintiffs' proposed class, as well as one of its named representatives, are apparently not "in custody" within the meaning of 28 U.S.C. § 2241. As to these plaintiffs, the exhaustion requirement is clearly inapplicable. Thus, in these circumstances, whether or not exhaustion is appropriate as to the confined plaintiffs, the requirement should not bar those entitled to pursue remedies in federal court from seeking such relief.

### *Plaintiffs' Standing to Sue*

Defendant concludes with an attack on the individual plaintiff's standing to challenge MHL §§ 9.13 and 9.39 on the theory that she is currently confined only under § 9.27 and cannot assert the rights of others with whom she lacks a common interest. He also argues that as to a patient voluntarily admitted and later retained in involuntary status pursuant to § 9.13, there can be no justiciable case or controversy since the patient has consented to such treatment.

These arguments are launched on the assumption that Carrie Greene is the sole named plaintiff. Apparently overlooked is Project Release, which also sues individually and on behalf of its members who "have been admitted to . . . mental hospitals as 'voluntary' patients pursuant to MHL § 9.13 and as involuntary patients pursuant to MHL §§ 9.27 and 9.39." (Complaint ¶ 7.) Plaintiffs also contend that Carrie Greene has in the last few months been confined under all three statutes challenged and continues to be so confined (Plaintiffs' Memorandum of Law in Support of the Motion for Class Certification at 7). These allegations satisfy the requirement that personal interest and a requisite stake in the outcome be demonstrated by those bringing such an action. The named plaintiffs thus have standing to bring suit. Moreover, whatever defects arise in the named plaintiffs' standing due to changes in their status, the determination of the class certification issue now pending might well resolve them. Finally, defendant's argument that there can never be a case or controversy with respect to § 9.13 voluntary patients because of their consent to treatment, is without merit. A patient whom the State decides to retain in an involuntary status pursuant to § 9.13 on the ground that he is in need of "involuntary" care hardly seems capable of consenting to any treatment. Although we express no view on the merits of plaintiffs' attack on the standards and procedures provided in § 9.13 voluntary admissions, the court concludes that plaintiffs' initial consent to treatment should not preclude an attack on the statute.

Defendant's motion to dismiss the complaint is accordingly denied.

SO ORDERED.