592 F.2d 234
 CENTRAL POWER AND LIGHT COMPANY, and West Texas Utilities Company,
Plaintiffs-Appellants, United States of America and the
Federal Energy Regulatory Commission,
Plaintiffs-Intervenors Appellants,
v.
The PUBLIC UTILITY COMMISSION OF TEXAS, Defendant-Appellee,
Houston Lighting & Power Co. et al., Defendants-Intervenors-Appellees.
 No. 78-2319
 Summary Calendar.*
United States Court of Appeals,
Fifth Circuit.
 March 28, 1979.
 
 W. N. Woolsey, Dyer, Redford, Burnett, Wray & Woolsey, Corpus Christi, Tex., Robert H. Alvis, Wagstaff, Harrell, Pope, Alvis, Dickenson & Erwin, Abilene, Tex., Jefferson D. Giller, Fulbright & Jaworski, Houston, Tex., for Central Power & Light Co. and West Texas Utilities Co.
 Steven A. Taube, Atty., Howard E. Shapiro, Sol., Federal Energy Regulatory Com'n, Leonard Schaitman, Robert S. Greenspan, Attys., Civ. Div., Dept. of Justice, Washington, D. C., for the U. S. and Federal Energy Regulatory Com'n.
 Joe N. Pratt, Asst. Gen. Counsel, Austin, Tex., for Public Utility Com'n of Texas.
 E. W. Barnett, Baker & Botts, Houston, Tex., Robert J. Hearon, Jr., Graves, Dougherty, Hearon, Moody & Garwood, Austin, Tex., for Houston Lighting & Power Co.
 M. D. Sampels, Worsham, Forsythe & Sampels, Dallas, Tex., for Dallas Power & Light Co., Texas Power & Light Co., and Texas Elec. Service Co.
 Lawrence S. Smith, Small, Craig & Werkenthin, Austin, Tex., for Lower Colorado River Authority.
 Jon C. Wood, Matthews, Nowlin, MacFarlane & Barrett, San Antonio, Tex., for City Public Service Bd. of City of San Antonio.
 Appeals from the United States District Court for the Western District of Texas.
 Before AINSWORTH, GODBOLD and VANCE, Circuit Judges.
 GODBOLD, Circuit Judge:
 
 
 1
 Plaintiffs-appellants Central Power and Light Company (CPL) and West Texas Utilities Company (WTU) are public utility companies engaged in the generation, transmission, and sale of electric power in Texas. Both are subsidiaries of Central and South West Corporation, a public utility holding company with holdings in Texas and Oklahoma. CPL and WTU are members of an interconnected system of electric generation and transmission facilities, the Electric Reliability Council of Texas (ERCOT). Before the events giving rise to this litigation, the members of this interconnected system were engaged solely in intrastate operations. The members are contractually bound to refrain from engaging in interstate transmission of power.
 
 
 2
 In May 1976, WTU began transmitting power to Oklahoma and selling it to several towns there. Some members of ERCOT immediately severed connections with WTU and CPL. WTU and CPL subsequently asked the Federal Power Commission to rule that ERCOT members were engaged in interstate commerce and thus subject to the jurisdiction of the FPC.[1]
 
 
 3
 In January 1977 several ERCOT members filed petitions with the Public Utilities Commission of Texas (PUC) seeking orders requiring CPL and WTU to abandon interstate service and requiring the reconnection of the full ERCOT system. After hearings the PUC granted these petitions. CPL and WTU filed suit challenging these orders in Texas courts and this court suit is currently pending. CPL and WTU also filed in federal district court requesting a declaratory judgment that PUC's orders are invalid insofar as they require CPL and WTU to refrain from engaging in interstate commerce.
 
 
 4
 In both suits, state and federal, plaintiffs presented federal constitutional claims that the PUC orders restrained interstate commerce and violated the Supremacy Clause, U.S.Const. Art. VI. Plaintiffs also presented state law claims in both suits. The federal district court abstained in deference to the Texas state courts, dismissing the case without prejudice to plaintiffs' right to refile after Texas courts addressed the state law question in the case.[2] Plaintiffs WTU and CPL and the intervenor Federal Energy Regulatory Commission appeal.
 
 
 5
 Relying on Railroad Comm'n v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) and Colorado River Water Conservation Dist. v. U. S., 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483, 496 (1976), the district court concluded that abstention is appropriate "where (1) there is an unsettled question of state law, and (2) the state law determination will moot or present in a different posture the (federal) constitutional questions."[3] On examination of the state law issues presented the district court concluded these unsettled issues could be resolved by the state courts in a way that would moot the constitutional claims or present them in a different posture. It accordingly dismissed the suit without prejudice.[4]
 
 
 6
 Appellants raise two contentions of error. First, relying on language in Colorado River, 424 U.S. at 813, 96 S.Ct. 1236, 47 L.Ed.2d at 495-96, they argue that Pullman abstention is inappropriate unless "exceptional circumstances" are presented and that no such exceptional circumstances were found to be present by the district court. On reading Colorado River it is clear that the language in question is used merely to describe the already well-established abstention doctrines. There is no indication that the court was announcing a new requirement to be added to the previously established prerequisites for Pullman abstention. In fact, the Colorado River Court explicitly reaffirmed the line of cases holding abstention appropriate where resolution of an unclear state law issue might moot a federal constitutional question. Id. at 814, 96 S.Ct. 1236, 47 L.Ed.2d at 496. Appellants cite no cases in which the prerequisites for Pullman abstention were present and abstention was denied because of the absence of "exceptional circumstances."
 
 
 7
 Second, granting that the requirements for Pullman abstention were accurately stated by the district court, appellants argue that they are not met in this case. For Pullman abstention to be appropriate there must be (a) an " uncertain" issue of state law, (b) the resolution of which may eliminate or materially alter the constitutional issue. See Procunier v. Martinez, 416 U.S. 396, 402-03, 94 S.Ct. 1800, 40 L.Ed.2d 224, 234 (1974). Of the three state law issues involved in the case appellants argue that one is not "uncertain" and that resolution of the other two could not avoid the necessity for resolving the constitutional issues. We disagree with all three contentions.
 
 
 8
 Appellants argued in the district court that the PUC's orders exceeded its statutory authority under the Public Utility Regulatory Act (PURA). Tex.Rev.Civ.Stat.Ann. Art. 1446c (Vernon Supp.1978). Appellants now argue that the crucial sections of PURA (set forth in the margin[5]) are not uncertain because they clearly place no limits on the PUC's regulation of Texas utilities other than those limits imposed by the U.S. Constitution, and that what federal constitutional limits exist for the PUC is a question of federal rather than state law. We do not find the statutory language so clear. This section has not been construed by the Texas courts, and from our examination of the statute it appears less than certain that the power to order a public utility to refrain from engaging in interstate commerce is "necessary and convenient" to the exercise of the PUC's regulation of utilities. We are not even sure that we have identified the right questions to ask in construing what appears to us to be a highly ambiguous statute. Any number of constructions that might avoid constitutional problems seem at least plausible to us. In light of this we can hardly adopt the reading of the statute urged upon us as clear by appellants. On this ground alone abstention is appropriate.[6]
 
 
 9
 In addition appellants contended in the district court that the PUC committed reversible state law procedural errors during the hearings conducted in this matter and that the PUC's findings of fact are not supported by substantial evidence as required by state law. Appellants do not argue that these state law issues are not "unclear." Instead they argue that resolution of them adversely to PUC would not obviate the necessity for deciding the constitutional issues raised by this case "because no order of a state court on these issues will have any effect on the clear and obvious holding and belief of the PUC that it has the power to intrude in the federal sphere as it deems necessary in the public interest in this case or presumably in any other case." Appellants misconstrue the purpose of declaratory judgment actions which are not intended to correct erroneous "beliefs" of state agencies but instead allow petitioners to gain declarations that actions or proposed actions of a governmental unit are unlawful. If the PUC's order is reversed by the Texas courts, the constitutional issue in this case will be mooted. Hence abstention is required even if we accept appellant's argument that the meaning of §§ 16 and 37 of PURA is certain.
 
 
 10
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I
 
 
 [1]
 The FPC held that of the ERCOT members only WTU and CPL were subject to federal regulation, but on appeal this order was remanded for clarification. See Central Power & Light Co. v. FERC, 188 U.S.App.D.C. 56, 575 F.2d 937, Cert. denied, --- U.S. ----, 99 S.Ct. 568, 58 L.Ed.2d 652 (1978)
 
 
 [2]
 Dismissal without prejudice, rather than a stay, is appropriate in abstention cases in which Texas courts are involved. See Harris County Comm'rs Court v. Moore, 420 U.S. 77, 88 n. 14, 95 S.Ct. 870, 43 L.Ed.2d 32, 42 (1975)
 
 
 [3]
 This branch of the abstention doctrine will be referred to herein as "Pullman abstention."
 
 
 [4]
 The district court also relied on a line of cases calling for abstention when the exercise of federal jurisdiction would be disruptive of a state administrative scheme. See, e. g., Colorado River, supra, 424 U.S. at 814, 96 S.Ct. 1236, 47 L.Ed.2d at 496; Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). We need not decide whether abstention on this ground was appropriate
 
 
 [5]
 The sections granting the PUC power are these:
 Sec. 16. The commission has the general power to regulate and supervise the business of every public utility within its jurisdiction and to do all things, whether specifically designated in this Act or implied herein, necessary and convenient to the exercise of this power and jurisdiction. The commission shall make and enforce rules reasonably required in the exercise of its powers and jurisdiction, including rules governing practice and procedure before the commission. The commission may call and hold hearings, administer oaths, receive evidence at hearings, issue subpoenas to compel the attendance of witnesses and the production of papers and documents, and make findings of fact and decisions with respect to administering the provisions of this Act or the rules, orders, or other actions of the commission.
 Sec. 37. Subject to the provisions of this Act, the commission or railroad commission is hereby vested with all authority and power of the State of Texas to insure compliance with the obligations of public utilities in this Act. For this purpose the regulatory authority is empowered to fix and regulate rates of public utilities, including rules and regulations for determining the classification of customers and services and for determining the applicability of rates. No rule or order of the regulatory authority shall be in conflict with the rulings of any federal regulatory body.
 
 
 [6]
 Although Public Utility Comm'n v. City of Corpus Christi, 555 S.W.2d 509 (Tex.Civ.App.1977), Aff'd, 572 S.W.2d 290 (Tex.1978) deals with implied powers of the PUC, this case certainly does not support the proposition that the only limits on the PUC's power are imposed by the U.S. Constitution