**Bimalendu GANGULY, Plaintiff,**

v.

**NEW YORK STATE DEPARTMENT OF MENTAL HYGIENE–DUNLAP MANHATTAN PSYCHIATRIC CENTER et al., Defendants.**

No. 78 Civ. 568 (CES).

United States District Court, S. D. New York.

March 25, 1981.

---

Krishna M. Vempaty, Jamaica, N. Y., for plaintiff.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for defendant; Marion R. Buchbinder, Asst. Atty. Gen., New York City, of counsel.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiff brought suit seeking damages for discrimination that allegedly occurred during the period of plaintiff's employment as a psychiatrist by the New York State Department of Mental Hygiene. Claims are alleged under 42 U.S.C. §§ 1981, 1983 (1976), 42 U.S.C. § 2000e *et seq.* (1976) ("Title VII") and various New York statutes. Defendants in this suit are Drs. Waugh, Talbott, Koz and personnel administrator Frangos (collectively the "individual defendants"), Dunlap Manhattan Psychiatric Center ("Center"), the New York State Department of Mental Hygiene, the Commissioner of Mental Hygiene, and the New York State Department of Civil Service, as well as its Commissioner (collectively the "state defendants"). Currently at issue are plaintiff's motion for partial summary judgment and defendants' cross-motion for summary judgment.

The parties 9(g) statements, the pleadings and interrogatories reveal the following undisputed facts. Plaintiff was hired by the New York State Department of Mental Hygiene in 1968. By 1972, plaintiff achieved the civil service designation of a Psychiatrist II ("level II") at the Center. The Center is owned and funded by the State of New York, operated by the New York State Department of Mental Hygiene and staffed by civil service employees. In an effort to qualify for promotion to Psychiatrist III ("level III"), plaintiff obtained certification by the American Board of Psychiatry and Neurology ("Board") on October 13, 1973, received New York State endorsement of his District of Columbia license to practice medicine and took a competitive civil service exam. Plaintiff passed the exam and was placed on the eligibility list for promotion to level III on June 28, 1974. He remained on the eligibility list through June 28, 1975.

Between June 28, 1974 and June 28, 1975 several positions were available at the Center which could be occupied by a level III employee. Plaintiff actively sought promotion to these positions, but was not promoted to level III. Plaintiff filed a complaint with the New York State Division for Human Rights ("Division") on November 10, 1975 and filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on November 13, 1975. The Division dismissed plaintiff's complaint on the ground of administrative convenience in December, 1976. The EEOC found that there was reasonable cause to believe that the Center's dismissal of plaintiff violated Title VII; and issued a notice of right to sue. Plaintiff commenced this action within 90 days of receiving this notice. In June, 1977, plaintiff was appointed to level III and was removed from that position on March 8, 1979.

Plaintiff seeks relief on a number of grounds. We may grant summary judgment on a claim only if there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c). We shall examine each of plaintiff's claims separately to determine whether material factual disputes remain.

### 1. *42 U.S.C. §§ 1981, 1983*

■ Plaintiff claims that he was denied equal employment rights by all of the de-

fendants in violation of 42 U.S.C. § 1981 (1976) and that he was denied equal rights or civil rights by the individual defendants in violation of 42 U.S.C. § 1983 (1976). The defendants assert the statute of limitations as a defense to much of this action. In a suit under section 1981 or section 1983, we apply the statute of limitations of the most analogous state action. *Meyer v. Frank,* 550 F.2d 726, 728 (2d Cir.), *cert. denied,* 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 90 (1977); *Keyse v. California Texas Oil Corp.,* 590 F.2d 45, 47 (2d Cir. 1978). This Circuit has consistently applied a three year statute of limitations in such suits. *See, e. g., Meyer v. Frank,* 550 F.2d at 728, *cert. denied,* 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 90 (1977); *EEOC v. Enterprise Ass'n Steamfitters Local 638,* 542 F.2d 579, 590 (2d Cir. 1976), *cert. denied sub nom. Rios v. Enterprise Ass'n Steamfitters, Local 638,* 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977); *Keyse v. California Texas Oil Corp.,* 590 F.2d at 47. As the original complaint in this action was filed on February 8, 1978, the plaintiff is barred from asserting claims arising prior to February 8, 1975. Thus, the acts alleged in paragraphs 8, 9 and 11 of the amended complaint cannot serve as a basis for relief under §§ 1981, 1983. This includes defendants' alleged failure to appoint plaintiff unit chief of the Alcoholism Unit in November, 1973, or to appoint plaintiff to fill the position vacated by Dr. Grahl in April, 1974, or to appoint plaintiff to the position advertised in the newspaper in October, 1974.

■ Five of plaintiff's § 1981 and § 1983 claims remain live controversies: defendants' failure to replace three provisional appointees with plaintiff as a permanent level III,[1] defendants' alleged failure to ap-

point plaintiff unit chief of the Greenwich Village Unit and the hiring of Dr. Wiesenfreund for that position, the appointment of Dr. Biron to provisional level III, the appointment of Dr. Hornick as a permanent level III, and the alleged retaliatory removal of plaintiff from his unit chief position in March, 1979. The state defendants raise the Eleventh Amendment as a bar to these remaining claims. The Eleventh Amendment prevents federal courts from exercising jurisdiction over suits by private parties against state agencies without the consent of the state. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3057, 57 L.Ed.2d 1114 (1978); *Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974). It has been held that § 1983 does not abrogate the state's immunity from suit. *Edelman v. Jordan,* 415 U.S. at 677, 94 S.Ct. at 1362. However, state officials may be sued in their official capacity for prospective relief. *Id.; Hutto v. Finney,* 437 U.S. 678, 680, 98 S.Ct. 2565, 2568, 57 L.Ed.2d 522 (1978); *see Ex Parte Young,* 209 U.S. 123, 159, 28 S.Ct. 441, 453, 52 L.Ed. 714 (1908). Moreover, the state defendants may be liable for the acts of their subordinates under the doctrine of *respondeat superior* as long as injunctive and declaratory relief is sought, although *respondeat superior* is no basis for a damage award under § 1981 or § 1983. *See Project Release v. Prevost,* 463 F.Supp. 1033, 1036–37 (E.D.N.Y.1978); *Gill v. Monroe Cty. Dept. of Soc. Serv.,* 79 F.R.D. 316, 335 (N.D.N.Y.1978); *Hupart v. Bd. of Ed. of New York,* 420 F.Supp. 1087, 1107–08 (S.D.N.Y.1976).

■ We must determine the permissible scope of plaintiff's claims in light of these strictures. Plaintiff's amended com-

---

1. Although plaintiff's complaint states that the failure to replace the provisional appointees occurred in July, 1974, that does not determine when the statute of limitations runs. The statute of limitations begins to run when plaintiff knew or should have known of the events giving rise to his cause of action. *See, e. g., Bireline v. Seagondollar,* 567 F.2d 260, 263 (4th Cir. 1977), *cert. denied,* 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979). There is a factual question of when the cause of action accrued. It is plausible that plaintiff had available to him

sufficient facts evidencing potential discrimination concerning defendants' failure to promote plaintiff to level III in place of three provisional appointees only after plaintiff's eligibility for promotion terminated on June 28, 1975. It was after plaintiff's eligibility for promotion to level III terminated that he filed complaints with the Division for Human Rights and the EEOC. Plaintiff's claims under paragraph 10 of the amended complaint are therefore timely under the three year statute of limitations.

plaint seeks a declaratory judgment that plaintiff was entitled to employment at level III from the date of his inclusion on the civil service list and that defendants' actions in denying him such a position were and still are unlawful.[2] Additionally, plaintiff seeks back pay from the first date of discrimination, damages, costs and attorney's fees. Any award of back pay or damages against the state defendants must be paid, if at all, from public funds in the state treasury. That is precisely the type of compensatory relief barred by the Eleventh Amendment. *See Edelman v. Jordan*, 415 U.S. at 663, 668, 94 S.Ct. at 1355, 1358; *Solin v. State Univ. of N.Y.*, 416 F.Supp. 536, 539 (S.D.N.Y.1976). But an award of attorneys' fees to the prevailing plaintiff in a § 1981 or § 1983 action, as authorized by 42 U.S.C. § 1988 (1976), is not necessarily prohibited by the Eleventh Amendment. *Gagne v. Maher*, 594 F.2d 336, 341–42 (2d Cir. 1979), *aff'd*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980). When a plaintiff is awarded prospective relief, recovery of attorneys' fees is merely an ancillary effect on the state treasury of the prospective relief. *Id.* Only plaintiff's claims against the state defendants seeking prospective relief and accruing after February 8, 1975 and, in the event plaintiff prevails, a claim for attorneys' fees may be entertained in this action.

Various defenses to § 1981 and § 1983 liability are asserted on behalf of defendants Frangos, Waugh, Talbott and Koz.[2a] In order to assess the sufficiency of these defenses to plaintiff's allegations of employment discrimination, we must first establish the elements of the causes of action under 42 U.S.C. § 1981 (1976) and 42 U.S.C. § 1983 (1976). Liability under § 1983

for racial discrimination requires proof of discriminatory purpose or intent. *See Village of Arlington Heights v. Metropolitan Hous. Development*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977). It is an open question whether § 1981 also requires purposeful discrimination. *See County of Los Angeles v. Davis*, 440 U.S. 625, 637, 99 S.Ct. 1379, 1386, 59 L.Ed.2d 642 (1979) (Powell, J., dissenting). The protection against discrimination in employment provided by § 1981 is essentially analogous to Title VII. *See Carrion v. Yeshiva Univ.*, 535 F.2d 722, 729 (2d Cir. 1976); *Ingram v. Madison Sq. Garden Center, Inc.*, 482 F.Supp. 414, 423 (S.D.N.Y.1979). Therefore, a violation of § 1981 can be proved by evidence of either "disparate impact" or "disparate treatment." *Id.; Patterson v. United Federation of Teachers*, 480 F.Supp. 550, 553 (S.D.N.Y.1979). *See Whiting v. Jackson State Univ.*, 616 F.2d 116, 121 (5th Cir. 1980); *but see Bronze Shields, Inc. v. N.J. Dept. of Civ. Serv.*, 488 F.Supp. 723, 729 (D.N.J.1980). Disparate impact is shown if the criteria used to determine job eligibility operate to exclude minorities. *Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1973). Disparate treatment, on the other hand, requires proof of a discriminatory intent. *Ingram v. Madison Sq. Garden Center, Inc.*, 482 F.Supp. at 425.

Plaintiff may establish a prima facie case of discriminatory treatment by showing: "(1) that he belongs to a racial minority; (2) that he applied and was qualified for a job for which the employer was seeking applications; (3) that, despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained open and

---

**2.** Declaratory judgments are authorized by 28 U.S.C. § 2201 (1976) as to federal claims and by N.Y.CPLR § 3001 (McKinney) (1974) as to state claims. Plaintiff presented federal statutory claims and state constitutional and statutory claims for employment discrimination by state officials and civil service employees. A declaratory judgment action is an appropriate vehicle to test the statutory authority and legality for acts of such parties. *See, e. g., Central Power and Light Co. v. Public Utility Comm'n*, 592

F.2d 234, 238 (5th Cir. 1979); *United States Lines Co. v. Shaughnessy*, 195 F.2d 385, 386 (2d Cir. 1952); *Bloom v. City of New York*, 35 A.D.2d 92, 97, 312 N.Y.S.2d 912, 916–17 (2d Dept.), *aff'd*, 28 N.Y.2d 952, 323 N.Y.S.2d 436, 271 N.E.2d 919 (N.Y.1970).

**2a.** Defendants do not raise an issue of the personal responsibility of the state defendants. *See Project Release v. Prevost*, 463 F.Supp. at 1036–37.

the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The burden thereafter shifts to the defendants to produce some evidence indicating a non-discriminatory reason for plaintiff's rejection. *Id.* at 801, 93 S.Ct. at 1823.

■ We need not decide the precise contours of § 1981 at this time as plaintiff has established a prima facie case of intentional discrimination. *See Members of Bridgeport Housing Authority Police Force v. Bridgeport,* 85 F.R.D. 624, 643 (D.Conn.1980). Plaintiff, an Asian Indian, is a member of a racial minority. As a Hindu, plaintiff is also a member of a religious minority. Plaintiff applied for promotion to level III in at least one available position and, at the time, he was among those minimally qualified for the job.[3] Plaintiff was not promoted and the Center subsequently sought applicants from persons of plaintiff's minimal qualifications. Therefore, plaintiff has established a prima facie case of discriminatory treatment.

■ Defendants raise serious factual issues concerning the actual reason for plaintiff's rejection. We cannot grant summary judgment for plaintiff or for all defendants. We shall, however, examine plaintiff's allegations and the defenses raised by each individual defendant—Frangos, Waugh, Talbott and Koz.

Frangos was the assistant personnel administrator at the Center from May, 1973 until February, 1976 and is still employed at the Center. He seeks to avoid liability under § 1981 and § 1983 by disclaiming any personal participation in the selection of appointees for level III. However, plaintiff alleges that he was interviewed by Frangos and others on April 23, 1975 for a promotion to an alleged level III position. Frangos' answers to plaintiff's interrogatories state that the personnel administrator is involved in hiring and promotion of civil service employees. The acts alleged to involve Frangos are not time-barred. There are questions of fact whether Frangos participated in the hiring process, whether the promotion was a level III position and whether there was non-discriminatory justification for denying plaintiff's promotion. Therefore, summary judgment for either party is inappropriate at this time.

Waugh was Acting Director of the Center between September, 1973 and February, 1974, as well as a member of the search committee that interviewed plaintiff for the position of unit chief of the Greenwich Village Unit in 1975. Waugh contends that he was not motivated by a discriminatory purpose in exercising his minor role in rejecting plaintiff's application for promotion. The question whether defendant was motivated by a discriminatory purpose is a factual question that cannot be resolved on a motion for summary judgment.

Talbott was Director of the Center from February, 1974 until September, 1975. That was the period when plaintiff was denied appointment to unit chief of the Greenwich Village Unit and the period during which at least one provisional appointment was made that plaintiff claims was discriminatory. Once again, Talbott's affidavit raises questions regarding the merits of denying plaintiff a promotion. We can-

---

**3.** Defendants dispute plaintiff's qualifications for the promotion. Defendants contend that subjective factors, such as administrative ability and interpersonal communications, rendered plaintiff unqualified for level III. These are factual issues concerning plaintiff's capabilities and performance that are sufficient to deny defendants' motion for summary judgment. Decisions holding that plaintiffs failed to establish a prima facie case in light of subjective qualifications are generally rendered after trial. *See, e. g., Falkenheiner v. Legal Aid Soc'y,* 471 F.Supp. 429, 434 (M.D.La.1979); *Leiman v.*

*Fashion Inst. of Tech.,* 441 F.Supp. 854, 858 (S.D.N.Y.1977). Moreover, it is undisputed that plaintiff passed the competitive examination and possessed sufficient subjective qualities to be interviewed and later promoted to level III. This information, together with the statistical disparity in hiring minorities at level III, satisfied plaintiff's burden of proving a prima facie case. *See Meyer v. Mo. Highway Comm'n,* 567 F.2d 804, 810 (8th Cir. 1977), *cert. denied,* 435 U.S. 1013, 98 S.Ct. 1888, 56 L.Ed.2d 395 (1978).

not dismiss plaintiff's § 1981 and § 1983 claims as against Talbott.

Koz became director of the Center in February, 1977 and has served in that post to the present time. Plaintiff alleges that Koz was involved in discriminatory conduct in paying Dr. Hornick a higher salary than plaintiff received for the same position and in demoting plaintiff from his provisional level III position as unit chief of the Metropolitan East Side Unit. As none of the allegations in paragraphs 8–14 of the amended complaint implicate Koz, only paragraphs 15–17 are actionable as to him. We cannot grant summary judgment for either party as to the claims alleged against Koz because material factual issues remain concerning the merits of plaintiff's claim and Koz's justification.

In sum, plaintiff's § 1981 and § 1983 claims under paragraphs 10 and 12–17 of the amended complaint are actionable as to all defendants except Koz, provided that back pay and damages may not be awarded at the expense of the state defendants. Koz is liable for any violations alleged in paragraphs 15–17.

## 2. Title VII

■ Plaintiff also claims that he was denied equal employment opportunities in violation of 42 U.S.C. § 2000e *et seq.* (1976) ("Title VII"). The defendants raise the Title VII statute of limitations as a bar to much of this action. As a prerequisite to this action, plaintiff must have filed a charge with the EEOC within 180 days of the alleged discriminatory employment practice or "in the case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State . . . agency" within 300 days of the alleged act. 42 U.S.C. § 2000e–5(e) (1976); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). Plaintiff filed a charge with the Division on November 10, 1975 complaining only of the events surrounding the appointment of Dr. Wiesenfreund as chief of the Greenwich Village Unit. On November 13, 1975, plaintiff filed

a charge with the EEOC containing the allegations in the Division charge and the particulars of paragraphs 8–9, 11–14 of the amended complaint which occurred between late 1973 and October, 1974. Applying either the 180 day or 300 day limitations' period would ordinarily bar this Title VII action as to those events in paragraphs 8, 9 and 11 of the amended complaint.

The claims in paragraphs 8, 9 and 11 may be actionable if the timely allegations in the charge to the EEOC were related to the time-barred incidents in such a manner that continuing discrimination was evident. *See Egelston v. State Univ. College at Genesco,* 535 F.2d 752, 755 (2d 1976). It is not enough, however, that the time-barred acts had an impact on plaintiff as of the time of the charge. *See United Air Lines v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 108 (2d Cir. 1978). Plaintiff must allege continuing violations, not merely the results of past violations, in order to obtain relief for otherwise time-barred acts. *See Kohne v. Imco Container Co.,* 480 F.Supp. 1015, 1019 (W.D.Va.1979). The allegations in paragraphs 8, 9 and 11 are independent of the timely claims. Although the result of each allegedly discriminatory act was that plaintiff was not appointed to level III and an appointment to level III in 1973–74 would have obviated plaintiff's subsequent application for promotion, the acts alleged in paragraphs 8, 9 and 11 were neither prior instances of the specific discrimination alleged in the EEOC charge nor elements of the violations included in the EEOC charge. *See Acha v. Beame,* 570 F.2d 57, 65 (2d Cir. 1978). Subject to evidentiary rules, the events described in paragraphs 8, 9 and 11 "may constitute relevant background evidence" in support of plaintiff's timely claims. *See United Air Lines v. Evans,* 431 U.S. at 558, 97 S.Ct. at 1889.

■ Finally, plaintiff urges us to apply equitable tolling provisions to permit him to assert these claims. It is an open question whether Title VII's time limitations may be tolled. *See Smith v. American President*

*Lines, Ltd.*, 571 F.2d at 109. Even if tolling is permissible, there are present none of the traditional justifications for equitable relief from statutes of limitation. Plaintiff knew all the necessary facts well within the limitations period, and plaintiff was not lulled into inaction by defendants' concealment or misrepresentation. *See* 51 Am.Jur.2d, Limitation of Actions, § 139 (1970). Therefore, plaintiff is precluded from asserting the claims contained in paragraphs 8, 9 and 11 of the amended complaint as Title VII violations.

Defendants also contend that plaintiff failed to establish a prima facie case of Title VII violations as to the remaining issues. We concluded in our prior analysis of plaintiff's § 1981 and § 1983 claims that the four-part *McDonnell Douglas* test for a prima facie case of discriminatory treatment was satisfied as to defendants Frangos, Waugh, Talbott and Koz with the limitations discussed above. *See* pp. 425–427, *supra.* The same test and the same reasoning applied in the Title VII context establishes plaintiff's prima facie case as to the individual defendants. Whether there was an adequate, non-discriminatory rationale for not promoting plaintiff to level III is a factual question that cannot be decided on a motion for summary judgment. It remains to consider whether plaintiff established a prima facie case as to the state defendants.

█ Although states may clearly be held liable for damages in a Title VII suit, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456–57, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976), there must be some support for attributing the alleged Title VII violations to particular state officials. *See United Black Firefighters v. Hirst*, 604 F.2d 844, 846 (4th Cir. 1979); *Leiman v. Fashion Institute of Technology*, 441 F.Supp. at 857. In this case, plaintiff joined as defendants the Department of Mental Hygiene ("DMH"), the Commissioner of the Department of Mental Hygiene ("CMH"), the Department of Civil Service ("DCS") and the Commissioner of DCS ("CCS"). It is undisputed that DMH operates the center and that DCS is responsible for staffing the center. Plaintiff also contends that CMH did not exercise his supervisory power and failed to adhere to his own personnel rules. However, there is no allegation that CMH's personnel rules were discriminatory or that CMH participated in the discrimination or had any knowledge of discrimination by the individual defendants. Nor has plaintiff identified any instances where CCS acted in a discriminatory manner or with knowledge of discriminatory conduct by others. As there is no factual basis for plaintiff's Title VII claim against CMH and CCS, the action must be dismissed as to those defendants.

Factual issues do remain concerning plaintiff's claims against DCS. Primary responsibility for hiring and promotion at the center seems to rest with DCS. Moreover, plaintiff raised questions concerning specific oversights of DCS. For example, plaintiff contends that DCS approval of the appointment of Dr. Biron as a provisional level III was improper as Dr. Biron did not meet the minimum qualification of having a license to practice medicine in New York. Defendants' responsive affidavit raised factual issues that cannot be decided at this time.

In sum, the Title VII limitations' period bars suit on paragraphs 8, 9 and 11 of the amended complaint and plaintiff's Title VII claims against CMH and CCS are dismissed. DMH and DCS, however, shall remain defendants.

### 3. Pendent State Claims

Plaintiff contends that the defendants violated Art. 5, § 6 of the New York Constitution, N.Y. Civil Service Law §§ 61, 65, N.Y. Executive Law § 296, N.Y. Civil Rights Law §§ 40–c, 44–a, N.Y. Mental Hygiene Law Art. 7 and the regulations thereunder. We must determine the basis of subject matter jurisdiction over plaintiff's claims and whether factual issues remain to be decided.

█ Neither section of the Civil Rights law cited by plaintiff provides subject matter jurisdiction over a private ac-

tion for employment discrimination.[4] The Mental Health law does not provide subject matter jurisdiction over this action. Nor is there a private right of action for the type of violation of the Civil Service law that plaintiff alleges.[5] However, most of plaintiff's state claims are actionable under N.Y. Executive Law § 297 (McKinney) (1972 & 1980 Supp.). Section 297 created a right of action for employment discrimination as an alternative remedy to filing a claim with the Division of Human Rights. *See id.*, § 297(9). Under the statute, suit must be filed within one year after the alleged unlawful discriminatory practice. *Id.*, § 297(5); *Beckford v. Corning Glass Works*, 75 A.D.2d 835, 427 N.Y.S.2d 873, 874 (2d Dept. 1980). This action was commenced on February 8, 1978. Any instances of discrimination occurring on or after February 8, 1977 are timely. That includes the claims related to Dr. Hornick's salary and the retaliatory dismissal.

In addition, ongoing practices of discrimination are actionable within one year of the date the practice ceased although some events occurred more than one year prior to commencement of the action. *See Div. of Human Rights v. Monroe Cty. Dept. of Soc. Serv.*, 69 A.D.2d 996, 996, 416 N.Y.S.2d 674, 676 (4th Dept. 1979); *Russell Sage College v. Div. of Human Rights*, 45 A.D.2d 153, 155, 357 N.Y.S.2d 171, 172 (3d Dept. 1974). The only claims of continuing discrimination that were possibly brought within one year of the time the activity ceased concern the continued provisional appointments. Plaintiff complained of five discriminatory provisional appointments. Dr. Allen was

last employed as a provisional level III on December 5, 1974 and plaintiff's claim in paragraph 9 of the complaint is time-barred. Paragraph 10 of the complaint registered a charge of discrimination in continuing the provisional level III appointment of three doctors. Of these three, Drs. Binkowski and Mesec were last employed as provisional level III's in 1975. Plaintiff's action is therefore time-barred as to Drs. Binkowski and Mesec. However, plaintiff's allegations in paragraph 10 of the complaint concerning Dr. Mavrovic are timely, as Dr. Mavrovic was not terminated until July, 1978. Similarly, plaintiff's claim involving Dr. Biron is timely as Biron is still employed at the Center.

■ Defendants' motion for summary judgment raised the question whether plaintiff's claims related to the provisional appointments are supported on the merits. The undisputed facts are that Dr. Mavrovic was appointed a provisional level III on October 15, 1970 and continued in that position through July, 1978. It is also undisputed that Mavrovic was not Board certified. Plaintiff has not alleged any facts that place in issue Mavrovic's qualification for his original provisional appointment. The remaining issue is whether the Center discriminated against plaintiff as a matter of law by failing to replace Dr. Mavrovic when a Board certified individual who passed the relevant competitive exam was available for permanent promotion to level III.

A provisional appointment "shall be terminated within two months following the establishment of an appropriate eligible list for filling vacancies in such positions."

---

4. Section 40–c renders illegal discrimination by any person or state agency on the basis of race, creed, color or national origin. N.Y. Civil Rights Law § 40–c (McKinney) (1976). The remedy for such discrimination, however, is a penalty of between $100 and $500, and a possible fine or imprisonment. *Id.* § 40–d. Similarly, § 44–a makes it a misdemeanor for any person to discriminate in public employment. *Id.* § 44–a. Neither provision, nor any other section of the Civil Rights law, provides general subject matter jurisdiction over plaintiff's employment discrimination claim. We do not mean to imply that plaintiff's claims are insufficient to establish causes of action under these

sections of the Civil Rights law. However, these statutory provisions do not support plaintiff's primary claim for back pay, damages or promotion.

5. A taxpayer may bring suit to declare illegal or restrain payment of salary to persons in office in violation of the statute. N.Y. Civil Service Law § 102(1)–(2) (McKinney) (1973). Plaintiff raises one claim that might plausibly be actionable under § 102—the claim that Dr. Hornick received greater compensation than he was entitled to receive. However, § 102 does not support the bulk of plaintiff's claims.

N.Y.Civ.Serv. Law § 65(3) (McKinney) (1973). An "appropriate eligible list" exists when the results are available for an exam relevant to the position to be filled. *See, e. g., Samboy v. N.Y. State Liquor Auth.*, 52 A.D.2d 1016, 1016, 383 N.Y.S.2d 711, 712 (3d Dept. 1976). The statute permits successive provisional appointments "where an examination for a position or group of positions fails to produce a list adequate to fill all positions then held on a provisional basis, or where such a list is exhausted immediately following its establishment . . . ." N.Y.Civ. Serv. Law § 65(4) (McKinney) (1973). Pursuant to this statute, DCS promulgated rules and regulations regarding appointment and promotion. Rule 4.2 requires the appointment of an individual from an appropriate eligible list who is willing to accept the appointment and who is within the top three examined individuals, provided that three persons passing the exam indicate a willingness to accept appointment. 4 N.Y. CRR § 4.2(a) (1969). This so-called "rule of three" reasonably implements the provision of § 65(4) permitting successive provisional appointments absent "a list adequate to fill all positions then held on a provisional basis." Although New York civil service appointments are based upon merit and fitness, neither the constitution nor the legislature enacted an administrative straightjacket requiring appointment or promotion of every applicant passing an examination for a position where administrative skills, interpersonal relations, leadership and other intangibles are important. *See Koscherak v. Schmeller*, 363 F.Supp. 932, 934 (S.D.N.Y.1973); *Cassidy v. Municipal Civil Service Commission*, 37 N.Y.2d 526, 528–29, 375 N.Y.S.2d 300, 302, 337 N.E.2d 752, 753–54 (N.Y.1975). Plaintiff has not produced any evidence that the situation requiring application of the rule of three existed during the period of plaintiff's eligibility for Dr. Mavrovic's level III position. Accordingly, the Center was not required as a matter of law to replace Dr. Mavrovic with a permanent appointee.

■ That the Center was not required to replace Dr. Mavrovic does not determine whether the defendants discriminated against plaintiff by continuing Dr. Mavrovic's provisional level III slot and not replacing Mavrovic with plaintiff, as a permanent level III. Plaintiff alleges a statistical disparity in the numbers of Asians employed by the Center at level III and contends that he was qualified for promotion to level III. Also, defendant Koz is implicated in both the alleged retaliatory dismissal and the continuation of Dr. Mavrovic. There remain issues of fact concerning plaintiff's allegation of discrimination that preclude summary judgment on this issue. In accordance with F.R.Civ.P. 56(d), however, future proceedings on this claim shall address the question of discrimination under N.Y.Exec. Law § 297 and not the issue whether Dr. Mavrovic was required to be replaced under the Civil Service law.

Plaintiff also claims that the appointment and continuation of Dr. Biron as a provisional level III was discriminatory. We cannot determine that Biron's initial appointment was valid, as there is a factual dispute regarding the effect of a foreign license to practice medicine on a candidate's qualifications. There is also a factual question whether defendants discriminated against plaintiff in failing to consider him for the promotion awarded to Biron. Therefore, we cannot grant summary judgment on plaintiff's claim in paragraph 14 of the amended complaint.

■ Plaintiff claims that defendants violated N.Y. Mental Hygiene Law § 7.19(c) (McKinney) (1978) by subdividing the general eligibility list for promotions according to the facility or department in which applicants were employed. First, there is no evidence that the Center ever used a "general eligible promotion list" of names of individuals already employed at other facilities of DMH. Rather, at all times relevant to the suit, competitive testing was used. The statute permitting promotion by general eligibility lists also expressly permits open competitive exams. *See id.* Second, if we were to equate the competitive lists with general lists there is no evidence that defendants treated applicants from any fa-

cility differently from other applicants. When the eligibility list was certified to the Center by DCS, it contained the names of all applicants who passed the competitive exam and the canvass determined whether various applicants would accept a position at the Center. Therefore, as a matter of law, defendants have not violated the Mental Hygiene law.

■ We must also consider the appropriate remedies for the state law claims. Defendants contend that this court cannot direct plaintiff's appointment to level III as he is not currently included on the level III eligibility list, relying on *Tanzosh v. N.Y. Civ. Serv. Comm'n,* 58 A.D.2d 522, 395 N.Y. S.2d 185, 186 (1st Dept. 1977), *aff'd,* 44 N.Y.2d 906, 407 N.Y.S.2d 638, 379 N.E.2d 166 (1978). We disagree. As our survey of the New York law concerning civil service promotions and appointments shows, an applicant's presence on the eligibility list derived from the competitive exam is not the only way, or necessarily the best way, to achieve level III. If we find after trial that plaintiff was the victim of discrimination owing to his race, creed or color and that level III positions are available for which plaintiff is presently qualified and to which he would be appointed absent discrimination, we may declare plaintiff's right to promotion. *Tanzosh* is readily distinguishable from the present case. In *Tanzosh,* an applicant was denied appointment as a fireman and a policeman for medical reasons, although he had passed the competitive examination. Through the administrative appeals process, William Tanzosh was declared medically fit. The original decision that resulted in Tanzosh's disqualification for appointment was procedurally proper, non-discriminatory and justifiable in enforcing minimum job-related qualifications, although the determination ultimately proved wrong. The initial determination in Tanzosh did not threaten the efficacy of merit and fitness selection. *See also Cassidy v. Municipal Civil Service Comm'n,* 37 N.Y.2d at 528–29, 375 N.Y.S.2d at 302, 337 N.E.2d at 753–54. In this case, denial of promotion may have been based upon irrelevant, discriminatory criteria. Also, unlike *Tanzosh,*

we are asked in this case to reinstate plaintiff to a position for which he was qualified and in which he served for some time. *See, e. g., Stills v. Bd. of Educ., Union Free School Dist. No. 1,* 75 A.D.2d 602, 426 N.Y. S.2d 824, 825 (2d Dept. 1980) (discriminatory discharge of principal may require reinstatement).

Defendants also contend that an award of back pay is impermissible. *Reiser v. New York,* 198 Misc. 647, 650, 98 N.Y.S.2d 705, 707 (Ct. of Claims 1950). The *Reiser* court declined to award back pay because plaintiff had not first obtained a determination that he was wrongfully excluded from the civil service position he sought. *Id.* at 707. But the court observed that an appropriate suit may "establish the claimant's right, if any, to recover … any damages he may have sustained by reason of any wrongful act or omission on the part of the State." *Id.* Moreover, a back pay award is expressly permitted by N.Y.Civ.Serv.Law § 77 (McKinney) (1973) in the case of an employee removed from his position in violation of removal procedures. *See Ranni v. Berger,* 52 A.D.2d 607, 607, 382 N.Y.S.2d 107, 107 (2d Dept. 1976). However, we need not determine the appropriate measure of damages at this time. It is sufficient to permit plaintiff to attempt to prove damages, including liability for back pay, after plaintiff proves that he was excluded from appointment to level III by defendants' discrimination.

In sum, plaintiff's motion for partial summary judgment is denied. Defendants' motion for summary judgment is granted in part and otherwise denied.

SO ORDERED.